**In re John SANCHEZ, Jr. and Wife, Alice Sanchez, Debtors.**

**Bankruptcy No. 5–81–00975 E.**

United States Bankruptcy Court, W. D. Texas, San Antonio Division.

May 25, 1982.

William B. Crout, Law Offices of Diamond & Davis, San Antonio, Tex., for debtor.

Marion A. Olson, Jr., San Antonio, Tex., trustee.

John M. O'Connell, San Antonio, Tex., for Loper Mortg. Co./Lumberman's Inv. Corp.

## MEMORANDUM OPINION AND ORDER

JOSEPH C. ELLIOTT, Bankruptcy Judge.

On this date came on to be considered the briefs filed by the parties in the above styled and numbered cause on the Trustee's Objection to Confirmation and Motion For Dismissal, the Objection to Confirmation filed by Loper Mortgage Company/Lumberman's Investment Corporation and Debtor's Opposition thereto.

Having considered the matter in view of the file and record of the case, the arguments and briefs of counsel, the Court makes the following findings:

The Court finds that on June 24, 1981 John Sanchez, Jr. and Alice Sanchez sought the relief of this Court under the provisions of Chapter 13 of the Bankruptcy Code in Cause No. 5–81–00491–E. The 341 meeting in this proceeding was set for August 20, 1981, but on that date the Trustee was informed by the debtors' attorney that the debtors did not wish to continue in the Chapter 13 proceeding and that a motion to convert the case to a Chapter 7 proceeding would be filed. A plan was not confirmed during the Chapter 13 proceeding.

On September 3, 1981, this Court entered an Order pursuant to Debtor's motion converting the Chapter 13 case to a Chapter 7 proceeding. Subsequently, on December 2, 1981, an Order of Discharge was granted and on that same day the Debtor filed another Chapter 13 proceeding numbered 5–81–00975, which is the subject of this Opinion. The second Chapter 13 plan proposes to pay $375.00 a month to the Trustee on priority and secured debts which sur-

vived the December 2, 1981 discharge under Chapter 7 and consisted solely of debts against exempt property. The question presented to the Court by the opposition of the Trustee and Loper Mortgage Company/Lumberman's Investment Corporation is whether the new Chapter 13 plan meets the good faith requirement of Section 1325(a)(3) of the Bankruptcy Code in light of the circuitous route these debtors have traveled in reaching this point.

Several Courts have dealt with situations such as the one presently before the Court. *See e.g. In Re Troutman*, 11 B.R. 108, 7 B.C.D. 947 (Bkrtcy.E.D.N.Y.1981); *In Re Sardella*, 8 B.R. 401, B.L.D. ¶ 67841 (Bkrtcy. S.D.Ohio 1981); *In Re Diego*, 6 B.R. 468, B.L.D. ¶ 67710 (Bkrtcy.N.D.Cal.1980). Each has found the Chapter 13 plans ultimately offered by the Debtor following a tortuous procedure as we have before us to be in contravention of the "good faith" requirement of Section 1325(a)(3).

In *Troutman*, the debtors received a Chapter 7 discharge and three months later commenced a Chapter 13 proceeding in which they scheduled the identical secured creditors previously scheduled in their Chapter 7 petition. 11 B.R. 108, 7 B.C.D. at 948. The Court dismissed the new Chapter 13, finding such circuitous tactics were a bad faith attempt to "pay their unsecured creditors nothing while paying off their secured claims over the life of the plan." *Id.* The Court in *Deigo*, supra, noted "[t]he combined petitions for all practical purposes constitute use of the bankruptcy remedies, Chapter 7 and Chapter 13, to accomplish by indirection what cannot be accomplished directly, namely, the proposal and confirmation of a Chapter 13 Plan proposing to pay nothing to general unsecured creditors." Similarly, in *Sardella*, the Court considered the Chapter 7 and Chapter 13 petitions filed by the debtors as part of an overall scheme, the purpose of which was "to restructure [secured non-dischargeable debt], not fairly deal with all creditors." *In Re Sardella*, 8 B.R. 401, B.C.D. ¶ 67,841 (Bkrtcy.S.D.Ohio 1981). This Court adopts the reasoning and holdings of *Diego, Troutman* and *Sardella*

and shall apply them in cases such as the one presently before the Court. The good faith provision of Section 1325(a)(3) requires the Court to examine the proximity in time of the Chapter 7 discharge to the Chapter 13 filing, and to compare the debts scheduled in the Chapter 7 with those scheduled in the subsequent Chapter 13. When a Chapter 13 plan fails to provide payments to unsecured creditors because of the discharge of their claims under a recent Chapter 7, and the priority, secured, exempt and non-dischargeable debts scheduled under the original Chapter 7 are essentially the same as those scheduled under the new Chapter 13, the Court shall find the Chapter 13 Plan to have the ostensible purpose of restructuring debt rather than to deal fairly with all creditors and, therefore, not a plan which meets the good faith requirement of Section 1325(a)(3).

This Court is most concerned with the ramifications such indirect tactics hold for the purposes of Chapter 13. *See* Report of the Committee on the Judiciary, Bankruptcy Law Revision, H.R.Rep.No. 595, 95th Cong. 1st Sess. 118, *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 5963, 6079. Rather than serve as a flexible and effective means for debtors to adjust and repay all of their debts to all creditors, Chapter 13 proceedings would be reduced to administering the repayment of secured creditors whose debts are non-dischargeable under Chapter 7. Under such circumstances, any desire on the part of debtors to pay unsecured creditors would be discouraged and imprudent. Clearly, such a result was not intended by the enactment of the new Code. The revision of the bankruptcy laws was as much in response to the abuse and excesses practiced by debtors as it was to those occasioned by creditors. The Committee on the Judiciary reported that ". . . inadequate supervision of debtors attempting to perform under wage earner plans have made them a way of life for certain debtors." Report of the Committee on the Judiciary, Bankruptcy Law Revision, H.R.Rep.No. 595, 95th Cong., 1st Sess. 117, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6078. Furthermore, the Commission observed that

"[e]xtensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years." *Id.*

The Court shares the Trustee's concern for the expectations of the great majority of wage earners in this district who are faithfully exerting their best efforts to follow the spirit of the new Code so that upon completion of their plans they will be looked upon with favor by the credit community and thereby effectively achieve their fresh starts. There is certainly considerable merit and justification for the Trustee's conclusion that the credit community's response to an acceptance of such plans would inevitably frustrate the expectations of the diligent wage earner. As this Court observed in *In Re Waldrep*, 20 B.R. 248 (Bkrtcy.W.D.Tex.1982) "[t]he history of bankruptcy legislation indicates . . . a recognition by Congress that a critical prerequisite for ensuring a true fresh start for debtors was to formulate a procedural scheme which would engender between debtor and creditor a relationship of cooperation and confidence that would survive and continue beyond the bankruptcy." As the Trustee has enunciated in his brief, "[i]f this plan and others like it are allowed to become part of the Chapter 13 program, there are no assurances that the credit community will make any attempt to differentiate between our 'best efforts' wage earners and our 'avoiding' wage earners."

Testimony elicited from the debtor indicates he and his attorney had planned in advance of the Chapter 7 discharge a refiling under Chapter 13. In fact, the new Chapter 13 case was filed on the same day the debtor received his Chapter 7 discharge and the new Chapter 13 scheduled all of the priority secured debts not discharged under the Chapter 7. The debtor's admission that he and his attorney approached the Chapter 7 and refiling under Chapter 13 as steps in an overall plan to achieve a fresh start prompts this Court, as the courts in *In Re Sardella*, 8 B.R. 401, B.L.D. ¶ 67841 (Bkrtcy. S.D.Ohio 1981) and *In Re Diego*, 6 B.R. 468, B.L.D. ¶ 67710 (Bkrtcy.N.D.Cal.1980), to consider the successive filings as a whole.

In conformance with the cases noted herein, this Court finds the debtor has improperly used the provisions of Chapters 7 and 13 to restructure his debts in such a way as to evade payment of unsecured debt. This Court is certain the Code was intended to provide fair treatment for both debtor and creditor and not as a means by which one side circumvents the protections accorded the other. The Bankruptcy Court has the inherent power to prevent abuse of Code provisions. *Perry v. Commerce Loan Co.*, 383 U.S. 392, 405, 86 S.Ct. 852, 859–860, 15 L.Ed.2d 827 (1966). The abuse of the bankruptcy process, purpose and spirit, by the debtors prevents a finding by this Court that the debtors have satisfied the "good faith" requirement of Section 1325(a)(3) of the Bankruptcy Code. *In Re Terry*, 630 F.2d 634, 635 (8th Cir. 1980).

Accordingly, it is ORDERED, ADJUDGED AND DECREED:

That the confirmation of debtor's plan be DENIED pursuant to Section 1325(a)(3) of the Bankruptcy Code as not having been proposed in good faith.

Finally, in consideration of the denial of confirmation of the debtor's proposed plan pursuant to Section 1325(a)(3) and the unreasonable delay that has arisen due to the debtor's abuse of Code provisions which is prejudicial to creditors, the Court ORDERS, pursuant to Section 1307(c)(1) and (4) that the Chapter 13 proceedings filed by the debtor in Cause No. 5–81–00975E should be, and the same are hereby, DISMISSED with prejudice.