ASSOCIATES FINANCIAL SERVICES
CORPORATION, Plaintiff,

v.

Carl Wade COWEN, Kay Edna Cowen,
George Ledford, Trustee, Defendants.

In the Matter of Carl Wade COWEN,
Kay E. Cowen, Debtors.

Bankruptcy No. 3–82–00706.
Adv. No. 3–82–0256.

United States Bankruptcy Court,
S.D. Ohio, W.D.

May 6, 1983.

William D. Dorfmeier, Dayton, Ohio, for
debtors.

R.H. Hammond, Dayton, Ohio, for plain-
tiff.

George W. Ledford, Englewood, Ohio,
Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy
Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court upon
"Complaint for Relief from Stay of Execu-
tion and objecting to Confirmation of Plan"
filed by Associates Financial Services Cor-
poration (hereinafter Plaintiff) on 5 May

1982. The Court heard the matter on 2 June 1982, at which time the parties agreed to present the matter for determination on the record inclusive of stipulated facts and anticipated legal memoranda. The following decision is therefore based upon the record, inclusive of the parties' stipulated facts and legal briefs, and the records in the case files for both Debtors' Chapter 13 proceeding, numbered 3–82–00706, and their previous Chapter 7 proceeding, numbered 3–81–01112, which are judicially noticed herein.

## FINDINGS OF FACT

The pertinent facts are not in dispute. On 13 April 1981, Debtors filed *pro se* a Voluntary Joint Petition under 11 U.S.C. Chapter 7. The Chapter 7 proceeding, assigned to The Honorable Ellis W. Kerr, Bankruptcy Judge, appears to have been uncomplicated. The first meeting of creditors was duly held on 12 May 1981. Note 11 U.S.C. § 341. On that date, Thomas R. Noland, the Chapter 7 Trustee also filed a Notice of Abandonment of Debtors' 1977 Chevrolet Monza automobile (hereinafter the Monza). Subsequently, on 22 July 1981, the Chapter 7 Trustee also disclaimed any interest in Debtors' real estate. On 10 August 1981, Debtors' discharge hearing was held. At the hearing the Debtors moved to redeem the Monza, and to reaffirm their obligation on their 1979 Ford Thunderbird (hereinafter the Thunderbird). 11 U.S.C. §§ 524(c) and 722. Debtors' requests were duly granted by Orders filed 12 August 1981 and 10 August 1981, respectively. On 5 November 1981, the Chapter 7 Trustee filed an Ad Interim Report and Account which was left blank, except for the notation, "This is a pro se case which Debtors are trying to protect themselves but which has several problems. Trustee is trying to work with Debtors' to complete this case." The Trustee filed a second Ad Interim Report and Account on 8 February 1982 which was also left blank except for the notation, "Conversion to Chapter 13 is in best interest of Debtors. Attempting to have Debtors file same."

On 12 March 1982, while Debtors' Chapter 7 Petition was still pending, Debtors filed a second Petition with this Court under 11 U.S.C. Chapter 13. Although the Chapter 7 proceeding was filed *pro se,* the Chapter 13 proceeding was filed under the indorsement of legal counsel. Debtors' Chapter 13 Schedules openly refer to their pending Chapter 7 proceeding. In their Schedules appended to the Chapter 13 Petition, Debtors list only three secured creditors, all of whom were scheduled in Debtors' Chapter 7 proceeding.* The secured creditors (including Plaintiff as junior mortgagee) are listed as secured by Debtors' principal residence, which was also listed as property of the estate in the Chapter 7 proceeding. The third secured creditor is listed as secured by Debtors' Thunderbird, which, as aforementioned, was also listed as property of the estate in the Chapter 7 proceeding. Plaintiff and the creditor secured by the Thunderbird duly filed Proofs of Claims in both Debtors' Chapter 7 and Chapter 13 proceedings. There was no proof of claim filed for the claim of the senior mortgagee in the Chapter 7 proceeding, which is not pertinent herein because the claim is apparently oversecured and duly asserted in the Chapter 13 proceeding. Although there were numerous unsecured creditors scheduled in Debtors' Chapter 7 proceeding, Debtors list the attorney handling their Chapter 13 proceeding as the only unsecured creditor in the Chapter 13 proceeding. In their Chapter 13 proceeding, Debtors also claim a number of exemptions, including $500.00 as exempt in both the Thunderbird and in a 1976 Buick, the $400.00 "catch-all" exemption, and several other exemptions in household goods and furnishings, and wearing apparel. The Court notes that Debtors did not claim any exemptions in their Chapter 7 proceeding.

On 14 August 1981, subsequent to the Chapter 7 Trustee's disclaimer of any inter-

---

* The Court notes that the claim of the senior mortgagee was apparently assigned during the pendency of the Chapter 7 proceeding, but that distinguishing between the assignor and assignee is not necessary for purposes of decision herein.

est in Debtors' real estate but prior to the filing of Debtors' subsequent Chapter 13 Petition, Plaintiff, as junior mortgagee in Debtors' home, filed a foreclosure action in the Common Pleas Court of Montgomery County, Ohio. Plaintiff's state court action was premised on the professed erroneous belief that the Chapter 7 Trustee's disclaimer of any interest in Debtors' real estate constituted a lifting of the automatic stay of 11 U.S.C. § 362(a) for the purpose of enforcement of Plaintiff's lien against the property.

The state court heard Plaintiff's Complaint for Foreclosure on 10 November 1981. Although several named Defendants appeared to assert their alleged interests in the subject real estate, Debtors did not file a responsive pleading or appear at the state court hearing. On 22 November 1981, the state court issued a Decision and Order sustaining Plaintiff's Motion for Summary Judgment. On 24 December 1981, the state court then filed a Judgment Entry journalizing its decision, as follows:

This matter, having come before the Court upon the Plaintiff's Motion for Summary Judgment along with a Memorandum and Affidavit in Support Thereof, and the Court finding that the Defendants Carl W. Cowen and Kay Cowen have failed to file any pleading of any nature in response to the Plaintiff's said Motion for Summary Judgment, does further find that there is no genuine dispute as to any material fact involved in this matter and that the Plaintiff is entitled to Judgment as a matter of law in accordance with Rule 56 of the Ohio Rules of Civil Procedure.

Upon consideration of the pleadings heretofore filed, the Court further finds that the Plaintiff has a good and valid lien upon the property which is the subject of this action by virtue of a certain mortgage recorded in the office of the Montgomery County Recorder on September 7, 1978, that the monthly installment payments due and owing to the Plaintiff from Defendants Carl and Kay Cowen upon a certain Promissory Instrument which the aforesaid mortgage se-

cures, are in arrears, and as a result thereof, a condition of the said mortgage has been broken and that the Plaintiff's mortgage lien has therefore become absolute.

The Court further finds that there is due and owing to the Plaintiff from Defendants Carl and Kay Cowen the sum of $6,402.81 plus interest thereon from the 14th day of April, 1981, but that no monetary judgment is hereby rendered as a result of a certain Voluntary Bankruptcy Action now pending in the United States Bankruptcy Court for the Southern District of Ohio, Western Division.

The Court further finds that the Trustee appointed in the aforesaid bankruptcy case has disclaimed any interest which said Trustee might have in the subject real property of this action.

The Court further finds that Defendant Cohoes Savings Bank of New York has a good and valid lien upon the premises described in the Plaintiff's Complaint which is the first and best lien upon said premises, save and except for real property taxes and assessments which may be due and owing.

The Court further finds that Winters National Bank and Trust Co., although being duly served with Summons in this action, has failed to answer or otherwise appear in this action, and has therefore waived and given up any claim it might have for any interest in the subject real property.

The Court makes no finding as to whether or not Defendants Paul Anderson, Kathleen Anderson and Patricia Small have valid liens upon the subject real property, and reserves this issue for further determination at such later time as the issues may properly come before the Court.

The Court further finds that the Defendant State of Ohio Department of Taxation has an interest in the subject real property by virtue of a certain Certificate of Judgment No. SJ–18410 filed Volume 32, Page 275 in the Office of the Clerk of Courts in Montgomery County, Ohio.

The Court further finds that the order of priority of the various liens against the subject property is as follows. First the statutory lien for real property taxes and assessments due and payable; second the mortgage lien of Defendant The Cohoes Savings Bank, to whom there is due and owing the sum of $17,430.77 plus interest at the rate of six percent per annum from October 1st, 1981; third the lien of the Plaintiff as a result of its mortgage upon which there is due and owing the sum of $6,402.81 plus interest from April 14, 1981; fourth, the lien of the Defendant State of Ohio Department of Taxation in the sum of $37.89 plus interest from September 24, 1980; fifth, any other liens found to be good and valid liens against the subject property.

It is therefore ORDERED, ADJUDGED and DECREED that unless the Defendants Carl Cowen and Kay Cowen pay or cause to be paid within five days from the date of this judgment and decree, to the Clerk of this Court, the costs of this action and to the Plaintiff all sums due and owing as set forth, including interest thereon, that the equity of redemption of said Defendants in the real property described in the Plaintiff's Complaint be foreclosed and that said real property be sold, SUBJECT TO THE MORTGAGE OF COHOES SAVINGS BANK, by the Sheriff of Montgomery County, Ohio and that an Order of Sale be issued to the said Sheriff of Montgomery County, Ohio directing him to appraise, advertise, and sell said real property, SUBJECT TO THE MORTGAGE OF COHOES SAVINGS BANK, as upon execution, and after payment of the costs of this action and of any real property taxes, assessments and penalties due and payable and constituting liens upon said property, the balance of the proceeds of such sale shall be distributed in accordance with the order of priority set forth above, with any remaining proceeds to be deposited with the Clerk of this Court for distribution according to further order of this Court as may be hereinafter determined. The Sheriff shall report his proceedings to the Court for further order.

A sheriff's sale was then set for 12 March 1982, but was cancelled because Debtor's filed their Chapter 13 Petition on that same date, shortly before the scheduled time of the sale. The state court Judgment Entry was later amended to clarify findings regarding alleged lienholder rights in the subject property by Order dated 2 June 1982, as follows:

It appearing to the Court that at the time of the filing of this Court's Judgment Entry of December 24, 1981, the first mortgage loan account of the Defendant, Cohoes Savings Bank, was believed to be paid currently by the Defendant-titleholders herein; and it further appearing that in fact, said Defendant-titleholders were actually in default in the payment of their mortgage for greater than 90 days; and it appearing that the Judgment Entry of this Court heretofore referred to provided that the real estate involved herein should be sold subject to the first mortgage of the Defendant, Cohoes Savings Bank; and it further appearing that the Defendant, Cohoes Savings Bank, now wishes to have the real estate appraised, advertised, and sold free of its first mortgage; it is

ORDERED that Judgment Entry of this Court filed on December 24, 1981 be, and the same hereby is, amended nunc pro tunc to order that the real estate involved herein be appraised, advertised, and sold free of the interest of all creditors, including the interest of the Defendant, Cohoes Savings Bank; and that said Judgment Entry shall remain intact in all other respects.

On 7 May 1982, the Chapter 13 Trustee filed a "Complaint Objecting to Confirmation . . . on the grounds that the Debtor has a pending Chapter 7 case in this Court and the debtor may not have both a Chapter 7 and a Chapter 13 case pending simultaneously." Debtors appear to have been duly served by the Chapter 13 Trustee. Debtors, however, have not filed a responsive pleading to this Complaint. To date, no further action has been taken on the Complaint.

On 10 May 1982, Debtors then filed an Amended Chapter 13 Plan (the Plan presently before the Court). Debtors essentially propose that the senior mortgagee in Debtors' home be paid outside the Plan, and that all secured creditors retain their liens in Debtors' property, subject to the following distributions:

First, Plaintiff "to cure" the prepetition default in Debtors' obligation to Plaintiff;

Second, "priority claims secured by liens";

Third, Plaintiff and the creditor secured by the Thunderbird *pro rata* until the claims (plus 10% annual interest) are paid in full; and then,

Fourth, all unsecured creditors (though in this case it appears there are no unsecured creditors except Debtors' attorney).

On 11 May 1982, the Chapter 7 Trustee filed a "Notice of Abandonment of Burdensome Property and Report of No assets," wherein the Chapter 7 Trustee reported, in pertinent part, as follows:

.    .    .    .    .

The Trustee further reports that he has elected not to take possession of any property of the estate which is here abandoned, and that he has neither received any property nor paid any moneys on account of this estate. *The Trustee further reports that the estate has no funds to employ an appraiser for real estate, if any, or to obtain an examination of the record title, or to verify the validity of real estate liens, and that such further investigation may require a reopening of the estate.*

.    .    .    .    .

WHEREFORE, your Trustee asks that this report be approved as the final report, without the filing of an inventory and the performing of any other duties imposed by Section 704 of the Bankruptcy Code and the Rules of Bankruptcy Procedure and that he be discharged of his trust herein, unless a further report is filed within thirty days because of assets later discovered or realized or unless further legal proceedings are deemed necessary by the Trustee.

On 12 May 1982, prior to the amendment of the state court Judgment Entry, Debtors obtained a Discharge in their Chapter 7 proceeding. On 28 May 1982, the Bankruptcy Court then ordered that the Chapter 7 Trustee's report of no assets be approved, the trustee be discharged and relieved of his trust, and the Chapter 7 proceeding be formally closed.

On 5 May 1982 (subsequent to the aborted foreclosure sale and during the pendency of both Debtors' Chapter 7 and 13 proceedings), Plaintiff filed the instant "Complaint for Relief of Execution and Objecting to Confirmation of Debtors." Essentially, Plaintiff contends that Debtors' Plan is proposed in bad faith. Plaintiff emphasizes the fact that the Chapter 13 filing was accomplished during the pendency of a Chapter 7 proceeding involving all the creditors scheduled in Debtors' Chapter 13 proceeding, and just prior to a scheduled sale of real estate which the Chapter 7 Trustee had abandoned. In Plaintiff's own words,

the Debtors herein filed their Chapter 13 petition on March 12, 1982 for the singular purpose of procuring time in which to avoid the conclusion of the foreclosure proceeding commenced in August, 1981 by the Plaintiff herein. There is no factual dispute that a sheriff's sale in the State Court foreclosure action was scheduled for 10:00 a.m. on the morning of March 12, 1982. Nor is there any factual dispute that the Chapter 13 petition was filed less than one hour prior to the time of the scheduled sheriff's sale, and that the Debtors and their counsel went to great efforts to make sure that both of the counsel for the foreclosing mortgage holder and the Montgomery County Sheriff's Department were notified of the Chapter 13 filing prior to the actual conduct of the sheriff's sale. Nor is there any factual question that the Debtors had had more than a reasonable period of time in which to make some arrangements to avoid the completion of the foreclosure and sale of the subject real property. The foreclosure Complaint was

filed in State Court on August 14, 1981, the Debtors were properly notified of same, did conduct negotiations regarding the possibility of resolving the matter, did have the advice of counsel during the period of time and question, did have notice that the State Court had granted a Judgment and Decree of Foreclosure, and did accumulate some funds with which to pay substantial sums due to other creditors who held security interest and/or mortgages upon property which the Debtors wished to retain.

Therefore, nearly seven months' time passed during which the possession and intent of Associates to foreclose was well known to the Debtors herein, and the position of Associates with regard to settlement was equally well known. [Citations to the record are omitted. The Court also notes that the facts stated by Plaintiff within the above quotation appear to be in accord with the facts as stipulated in the record.]

Plaintiff further argues that Debtors are ineligible to be Debtors in a Chapter 13 proceeding because the extent of their debts, if any, is not ascertainable because of the pending Chapter 7 proceedings; and, also, since essentially all debts scheduled in the Chapter 13 proceeding were earlier scheduled and discharged in a separate Chapter 7 proceeding, Debtors arguably possess no debt and, thus, cannot possess a *bona fide* purpose in undergoing Chapter 13 administration. Accordingly, Plaintiff prays for an order of the Court finding that the subject property is not property of the estate (because of the Chapter 7 Trustee's abandonment), that cause exists to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d), and further that confirmation of Debtors' proposed plan be denied.

Debtors basically respond merely that all their actions have been in good faith and in compliance with the Bankruptcy Code. Debtors argue, in part, as follows:

Mr. Cowen is an itinerant musician and as such, a license to drive is an absolutely essential tool of his trade. It is as essential in fact as the ability to play several instruments and read music.

The bankruptcy proceeding dragged on and on for want of the final report of the Trustee. The Trustee had, on July 22, 1981, disclaimed any interest he might have in the real property owned by Mr. and Mrs. Cowen and all that remained to be done was the filing of his final report. Finally, because he needed the discharge in bankruptcy for the purpose of his drivers license, Mr. Cowen went to the Trustee's office and sat there until the report was typed up, took it to the Court and obtained his discharge and then took the discharge to Columbus to the Bureau of Motor Vehicles. In this way, the discharge of bankruptcy was finally granted on May 12, 1982. Actually, however, the bankruptcy was completed with the discharge hearing, held in August, 1981.

In the meantime, jobs were not too numerous for Mr. Cowen and Mrs. Cowen had been laid off from work (by General Motors Corporation) even though she had eight years seniority. The Cowens were not able to keep up their payments on their secured debts. The situation was exasperated by Associates who demanded all of the arrearage by such and such a date and refused to take any partial payment whatsoever. Associates then filed for foreclosure and it became apparent that the Cowens were going to have to have a Chapter 13 Proceedings if they were going to save their residence. They made several efforts to settle with Associates but were just not able to gather together enough money fast enough to satisfy Associates and the Chapter 13 Proceedings was filed. They had been planned to do so for several weeks, but gathering the information seemed to be a difficult job for these clients.

Counsel for defendant, Associates, makes a considerable point in the fact that notice was given to him and others concerning the filing of the Chapter 13. It is the understanding of the undersigned that this was required.

In any event, the Chapter 13 Proceedings was filed just before the sale, but not just to stop the sale. This is a 100

percent payout plan and has been filed for a genuine, long term goal: to settle up the Cowens' financial affairs in a permanent fashion.

.    .    .    .    .

In this instance, the Cowens' real estate was "property of the estate" under their Chapter 7 Proceeding. When the property was abandoned by the Trustee, it ceased being "property of the estate" and became property owned by the Cowens, subject to liens. It remained that until they filed their Chapter 13 Proceedings, when it became again "property of the estate" but not the same "estate." The former "estate" was a Chapter 7 "estate." Now, it is a Chapter 13 "estate."

In the time between the abandonment of the property in the Chapter 7 Proceeding and the filing of the Chapter 13 Proceeding, the Cowens' real estate was no different from real estate owned by other people not in Bankruptcy Court and, of course, subject to foreclosure.

I believe Mr. Cowen, in his deposition, alluded to a personality problem with the local manager of Associates Financial Services Company. Because of that problem, Associates is apparently urging the Court to dismiss the Chapter 13 Proceeding or vacate the automatic stay, because of "technicalities."

There are no "technicalities" here, this is a very simple case. The debtors have debts, some of which are secured by real estate. They cannot pay one of the debts as it becomes due. The creditor would not take payments on the arrearage, but insisted on the entire arrearage in full. The debtors offer to pay 100 percent of everything due. This is the kind of Chapter 13 Proceeding that is and ought to be especially favored by the Court.

## DECISION AND ORDER

After the Debtors by choosing not to employ counsel created a veritable comedy of errors, they then employed an attorney to accomplish the impossible task of writing a musical score to create order out of chaos, accentuated by an inordinate delay in the administration of the Chapter 7 case. His purpose and attempts have been admirable.

■ The threshold question before the Court is whether Debtors may maintain simultaneous cases under both 11 U.S.C. Chapters 7 and 13. It is the determination of the Court that a debtor may not maintain two simultaneous and separate bankruptcy proceedings.

■ The filing of a petition in bankruptcy creates an estate consisting of the debtor's property. 11 U.S.C. §§ 301, 541(a) and 1306. In Chapters 7 and 13, the property of the estate is administered as the *corpus* of a trust, and a disinterested trustee is routinely appointed to act as "the representative of the estate," with "capacity to sue and be sued" as such. 11 U.S.C. §§ 323, 701, 702, 704 and 1302. A debtor possesses only one estate for purposes of trusteeship. Abandonment to a debtor by a Chapter 7 trustee does not create a second administrable estate while such trustee is still serving in his capacity as representative of the estate at large. Instead, the debtor's rights in the property are derivative from the Chapter 7 trustee's rights, which the trustee administered under his fiduciary duties to the estate.

The filing of two simultaneous petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve debtors' financial affairs by administration of a debtor's property as a single estate under a single Chapter within the Code. 11 U.S.C. §§ 103, 301, 302 and 303. The Bankruptcy Code provides different discharge remedies in different Chapters, and such remedies are intended to be exclusive for each estate. 11 U.S.C. §§ 103, 301, 523, 727 and 1328.

■ In this case, Debtors' Chapter 13 Petition is nullity. The pendency of Debtors' Chapter 7 proceeding is a matter of record, which this Court cannot now collaterally question. This Court may not in the context of this proceeding determine a date at which Debtors' were *de facto* discharged in their Chapter 7 proceeding based upon a bare allegation that the Chapter 7 Trustee

was dilatory. The record therein speaks for itself. Debtors received their Chapter 7 discharge on 12 May 1982 after having filed their Chapter 13 Petition on 12 March 1982. On the date of their Chapter 13 filing, the only procedural means to accomplish a Chapter 13 proceeding would have been either to convert to Chapter 13 or to request dismissal of the Chapter 7 proceeding for the purpose of a subsequent Chapter 13 filing. 11 U.S.C. §§ 706 and 707. There was, nevertheless, neither a *de facto* nor a *de jure* dismissal or conversion.

■ The "serial" filing of a successive Chapter 13 petition may not be permitted until, at the earliest, after the granting of the discharge in the prior Chapter 7 proceeding. *In re Tauscher,* 26 B.R. 99, 9 B.C.D. 1425 (Bkrtcy.E.D.Wis.1982); *In re Sanchez,* 20 B.R. 431, B.L.D. ¶ 68,765 (Bkrtcy.W.D.Tex.1982). If the essence of the successive use of Chapter 13 process is to restructure only debt which survived an earlier Chapter 7 proceeding, several courts have held that such filing reflects upon good faith, and would likely be impermissible absent an intervening change in circumstances. *In re Tauscher, supra; In re Sanchez, supra; Matter of Troutman,* 11 B.R. 108, 7 B.C.D. 947, B.L.D. ¶ 68,030 (Bkrtcy.E.D.N.Y.1981); *In re Sardella,* 8 B.R. 401, B.L.D. ¶ 67,841 (Bkrtcy.S.D.Ohio 1981); and *In re Diego,* 6 B.R. 468, B.L.D. ¶ 67,710 (Bkrtcy.N.D.Cal.1980). Also note discussion in *In re Robinson,* 18 B.R. 891, 8 B.C.D. 1132, 6 C.B.C.2d 251 (Bkrtcy.D.Conn.1982).

■ The granting of a discharge relieves a debtor from personal liability on the discharged debt. 11 U.S.C. § 524(a); *In re Nason,* 22 B.R. 690 (Bkrtcy.D.Me.1982). Thus, although a lien may survive, 11 U.S.C. § 506(d), a discharged debt which was not properly reaffirmed is not cognizable as "debt" in a subsequent proceeding without either a novation of the prior obligation or the creation of an entirely new debt. 11 U.S.C. § 101(11). Thus, a proposal "to cure" a previously discharged debt is itself an impossibility, despite the availability of (and stay of, upon a serial filing) the remedies accorded a lienholder under state law by virtue of a lien based on such discharged debt. 11 U.S.C. §§ 101(11), 362, 506(d), and 28 U.S.C.A. § 1471(c). See also, *In re Nason, supra;* and *In re Nefferdorf,* 26 B.R. 962, 10 B.C.D. 150 (Bkrtcy.E.D.Pa. 1983).

■ In this case, Plaintiff committed a wholesale violation of the automatic stay of 11 U.S.C. § 362(a)(5) by enforcement of its lien interest in Debtors' real estate prior to Debtors' Chapter 7 discharge and without relief from the automatic stay. 11 U.S.C. § 362(a)(5), (c)(2), and (d). In this regard, the Court specifically notes that abandonment of property by the Trustee does not constitute a lifting of the automatic stay on such property. 11 U.S.C. §§ 362(a)(5) and 554; See also this Court's opinion in *Matter of Estes,* 15 B.R. 25, B.L.D. ¶ 68,407, 33 U.C.C.Rep. 784 (Bkrtcy.Ohio 1981). Although this Court does not condone blatant violations of the automatic stay, the Court believes that no sanctions are warranted in the instant case. Debtors could have raised the defense of the bankruptcy stay in the state court foreclosure action, or could have sought a contempt sanction or injunctive relief in this forum during the simultaneous pendency of the Chapter 7 proceeding and the state court foreclosure action. Instead, Debtors chose to acquiesce to the state court foreclosure action under the apparent misconception held by all the instant litigants that the stay had been lifted. It is the determination of this Court that Debtors have sustained no damage from Plaintiff's automatic stay violation and that the subsequent discharge of Debtors under 11 U.S.C. § 727 acted to rectify Plaintiff's violation. The Court further notes that the state court decree under such a rationale has now further served to terminate Debtors' equity of redemption in the subject real estate, thereby rendering the rationale of this Court's opinions in *Matter of Custer,* 18 B.R. 842, 8 B.C.D. 1067 (Bkrtcy.Ohio 1982), and *Matter of McCurdy,* 9 B.C.D. 330, 21 B.R. 535 (Bkrtcy.Ohio 1982) inapplicable. All of the instant litigants are bound by the legal effects of the discharge in bankruptcy entered by Judge Kerr on May 12, 1982.

This order became *res judicata* and cannot be collaterally attacked in any court. Compassion and "good faith" are now mooted.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Debtors' instant Chapter 13 Petition is deemed nullity and is accordingly DISMISSED.