Gerald Krainess, Cleveland, Ohio, for debtor.

James F. Csank, Cleveland, Ohio, for Broadview Sav. and Loan Co.

Myron E. Wasserman, Cleveland, Ohio, trustee.

**In re Daniel L. KOSANOVICH, Debtor.**

**Bankruptcy No. B86–4081.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Oct. 26, 1987.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the motion of The Broadview Savings And Loan Company (Broadview) for relief from the automatic stay provisions of § 362 of the Code [11 U.S.C. § 362]. Upon due notice to all parties in interest, a hearing was had to the Court. The arguments of counsel have been considered, in addition to a review of the relevant pleadings and applicable portions of the Debtor's record. The following findings are rendered pursuant to Rule 7052 of the Bankruptcy Rules:

## I.

The Court has jurisdiction of the parties and subject matter pursuant to 28 U.S.C. § 1334, and the matter constitutes a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(G). The undisputed facts are as follows:

In 1977, Daniel L. Kosanovich (Debtor), executed a note and mortgage on his personal residence to Broadview. Thereupon he made payments to Broadview until a default occurred in October of 1985. The Debtor caused to be filed his Chapter 13 petition on December 30, 1986, whereupon an order for relief issued. Previously, in November of 1981, the Debtor was granted a discharge by this Court in a Chapter 7 case (B81–2366). No reaffirmation agreement was executed between the Debtor and Broadview respecting the 1981 Chapter 7 case. Nevertheless, the Debtor was allowed to remain in possession of his personal residence and continued to make, and Broadview continued to receive, regular monthly mortgage payments. As a result of the default in payments for October, November and December, 1985, Broadview initiated foreclosure proceedings to enforce its lien, whereupon the Debtor filed his Chapter 13 petition.

Broadview holds a first mortgage position on the subject property which constitutes the Debtor's personal residence. Prepetition delinquencies, amounting to fifteen payments, totalled an estimated $5,800.00. The principal mortgage balance, plus accrued interest at eleven percent per annum, totalled $29,562.00. Broadview's 1985 appraisal of the property revealed a market value of $52,500.00.[1] Debtor's offer to pay funds sufficient to fully reinstate his mortgage account was made but refused by Broadview. This motion ensued.

## II.

The issue for the Court's determination is whether a reaffirmation agreement is required on a consumer debt that is secured by real property. In the present situation, the provisions of § 524(c)(1) are applicable.

§ 524. Effect of discharge

(c) An agreement between a holder of a claim and the debtor, the consideration of which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title [11 U.S.C. § 727, 1141, 1228, or 1328];

In support of its motion for relief from the stay, Broadview asserts the following contentions:

(1) It is not a creditor of the Debtor;

(2) It holds the first mortgage on the realty owned and occupied by the Debtor;

(3) Debtor has made no payments to Broadview since October, 1985;

(4) Debtor received a Chapter 7 discharge in 1981 which discharged his indebtedness on the note to Broadview;

(5) An offer by Debtor to bring the loan current was not accepted because of the prior Chapter 7 discharge and the nonexistence of a reaffirmation agreement;

(6) Debtor's listing his Broadview mortgage as a debt in his Chapter 13 was in error;

(7) Its position in this matter is that of an "equity security" holder relative to the Debtor, and not a creditor of the Debtor.

In opposition to Broadview's motion, the Debtor does not dispute the underlying facts of this matter. He does, however, assert that the Bankruptcy Code at the time of his 1981 Chapter 7 discharge, did not require a reaffirmation on a consumer debt which was secured by a debtor's real property. For that reason, he continued to make mortgage payments to Broadview un-

---

1. Associate Financial holds a second mortgage in an approximate amount of $19,000.00.

til his temporary delinquency. Further, he contends that Broadview's motion should be denied as Broadview never objected to his plan which was confirmed on February 6, 1987. Additionally, Debtor observes that Broadview filed its proof of claim in this case in an amount of $5,481.18, as a secured creditor on the first mortgage and that such proof of claim was not withdrawn nor amended to reflect otherwise. Further, the Debtor contends that as early as January of 1986 it attempted to fully reinstate its mortgage with Broadview, only to have his payments refused by Broadview. Moreover, the Debtor contends that even post-confirmation, Broadview refuses to accept its payments in derogation of the confirmation order. Finally, the Debtor contends it would be unconscionable to allow Broadview to accept his mortgage payments for four years after his Chapter 7 discharge and now be heard favorably concerning the lack of a reaffirmation agreement.

Herein, no reaffirmation was entered into between the Debtor and Broadview prior to discharge of the earlier Chapter 7 case. In fact, at no time was a reaffirmation agreement entered into. With the full realization that no such agreement existed, Broadview continued to accept the Debtor's mortgage payments until the Debtor defaulted on his payments in October of 1985. The Debtor, likewise, knew that no reaffirmation agreement existed, yet he continued to make voluntary payments to Broadview. At no time between the Debtor's 1981 discharge and the default in October of 1985 did Broadview attempt to enforce its lien.

Principally, the Debtor relies on the pre–1984 Amendment version of § 524(c)6) which formerly was designated as § 524(c)(4) and read, in pertinent part:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-

bankruptcy law, whether or not discharge of such debt is waived, only if—

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement ...

■ The Debtor's interpretation of the former § 524(c)(4) section is inaccurate. Both the pre–1984 version of § 524(c)(6) (the old § 524(c)(4)) and the present language of § 524(c)(6) address the existence of an "agreement" relative to a consumer debt which was not secured by real property.[2] Without more, it is not necessarily implicit that a consumer debt which is secured by real property does not require a reaffirmation agreement prior to discharge. Effectively, the 1984 Amendments replaced the former § 524(c)(4) with the present § 524(c)(6) which provides:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement ...

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

It is clear from a reading of both the pre–1984 and the post–1984 versions, the existence of an agreement of reaffirmation was contemplated whether the consumer debt was unsecured or secured by real property. The Debtor misinterprets these statutory provisions by understanding that a consumer debt secured by real property pre–1984 did not require a reaffirmation agreement. What was not required in the former language of § 524(c)(4) was court

---

**2.** Prior to the 1984 Amendments, § 524(c)(6) was generally encompassed by the provisions of the former § 524(c)(4).

approval of a reaffirmation agreement pertaining to a consumer debt secured by real property. A reaffirmation agreement was to have been in existence between the parties prior to a discharge. Under the 1984 Amendments, § 524(c) was amended to simplify the debt reaffirmation agreement procedures in order to encourage debtors and creditors to make mutually satisfactory arrangements to repay debts outside of bankruptcy. (130 Cong.Rec., S.8894 (daily ad. June 29, 1984). For this reason, the Debtor's reliance on the *Coots* decision is misplaced. *In re Coots*, 4 B.R. 281 (Bankr.S. D.Ohio 1980).

■ Although the Debtor has misconstrued the provisions of § 524 as indicated above, equity demands a disposition favorable to the Debtor. It is undisputed that no reaffirmation agreement was executed prior to discharge in his previous Chapter 7 case. It is also undisputed that Broadview allowed the Debtor to remain in possession of the premises for four years after the 1981 Chapter 7 discharge and made no efforts to enforce its lien until it sought foreclosure in January of 1986. Further, it is undisputed that the Debtor has substantial equity in the property and has been in a position to fully reinstate his mortgage account since December of 1985. Only due to Broadview's refusal to accept the Debtor's tendered payments, including the delinquent payments for October, November and December of 1985, has Broadview not received a payment from the Debtor since October of 1985. Where substantial equity exists in a mortgaged property which is permissibly possessed for an extended period of time by a defaulted mortgagor without the existence of a reaffirmation agreement from a previous Chapter 7 case, equity demands that such a debtor not be dispossessed of the premises where a present ability exists to fully reinstate the mortgage account. To do otherwise would create an undue and substantial hardship on the Debtor. Herein, the Debtor attempted to cure his default in December of 1985 and again in January of 1986, only to have Broadview reject his payments and com-

mence a foreclosure action in January of 1986 which was stayed by this Chapter 13 case.

Contrary to Broadview's assertion that it is not a creditor of the debtor, it is noted that Broadview filed two proofs of claim in the amounts of $5,841.18 and $4,000.00, respectively, in Debtor's present Chapter 13 case. These claims, reflecting Broadview's valid lien against the premises were properly addressed in the Debtor's Plan even though there is no *in personam* liability against the Debtor.[3] *In re Lewis*, 63 B.R. 90 (Bankr.E.D.Pa.1986); *In re La Gasse*, 66 B.R. 41 (Bankr.Conn.1986). Moreover, Broadview filed no objection to the Debtor's Plan of debt adjustment which was confirmed. Broadview's further assertion that its proofs of claim were filed in error is incredible, particularly, where one proof of claim was filed in January, 1987 and the other being filed in February, 1987, without any attempt by Broadview to withdraw either claim. Nor was an objection to either of these claims filed by the Debtor.

### III.

In support of its motion for relief from stay, Broadview cites the court's holding in *In re Binford*, 13 C.B.C.2d 637; 53 B.R. 307 (Bankr.W.D.Ky.1985). That holding is readily distinguishable from the matter at bar. The gravamen of the holding in *Binford* was that a Chapter 13 plan can deal only with creditors of the estate. In that case, however, the affected creditor filed a timely objection to that debtor's Chapter 13 plan. In the present case, no objection was filed by Broadview regarding the Debtor's Plan. *Binford* further stands for the proposition that "Upon obtaining a Chapter 7 discharge, a debtor may not file a Chapter 13 petition to indirectly compel reaffirmation of a secured debt without prior creditor approval under § 524(c)." 2 *Collier on Bankruptcy*, ¶ 524.03, fn. 2(e) (15th ed. 1987).

Broadview also refers the Court's attention to *In re Fryer*, 47 B.R. 180 (Bankr.S. D.Ohio 1985). That case, too, is distin-

---

3. *See,* 11 U.S.C. 524(a).

guishable from the matter, *sub judice.* In that case, the creditor chose to enforce its lien against the debtor's property. The creditor in *Fryer* also successfully prosecuted an objection to the debtor's Chapter 13 plan. Presently, we have a creditor who took no such similar actions for a significant number of years causing the Debtor to justifiably believe that the lack of a reaffirmation agreement would not, of itself, subject him to a loss of his personal residence. Also, the movant's reliance on the holding in *In re Cowen,* 29 B.R. 888 (Bankr.S.D.Ohio 1983), is likewise misplaced. In *Cowen,* an individual filed a Chapter 13 case before a discharge had been granted in an earlier filed Chapter 7 case. Consequently, the debtor's Chapter 13 case was deemed to be a nullity.

Finally, the unrefuted testimony of the Debtor revealed that during the summer of 1986, a Broadview agent (Mr. Pavel) informed him to bring in a certain dollar amount. Subsequently, the Debtor was informed by the same agent that Broadview would not accept his payments. Debtor's testimony is also unrefuted where he testified that prior to 1985, Broadview made no mention of a reaffirmation agreement. This equivocal conduct is significant since the Debtor's Chapter 7 discharge was granted in 1981, and he had remained continuously in possession of his personal residence. The record is silent to show why Broadview chose not to enforce its lien sooner against the subject property. However, with no prior mention by Broadview to the Debtor of a reaffirmation agreement, while accepting the Debtor's payments over a four-year period, Broadview is equitably estopped from raising this issue at this late date. "Equitable estoppel arises as a result of the voluntary conduct of one party, whereby he is precluded from asserting a right as against another person who has, in good faith, relied upon such conduct and has been led thereby to change his position for the worse." *Arnold Bernstein Shipping Co., Inc. v. Tidewater Commercial Co., Inc.,* 84 F.Supp. 948 (D.Md.1949). At bar, the Debtor acted in good faith and justifiably relied upon Broadview's past conduct. It is further

unchallenged that Broadview had an enforceable lien interest in the Debtor's personal residence.

### CONCLUSION

Accordingly, Broadview's motion for relief from the automatic stay is provisionally granted, subject to the Debtor's present ability to pay Broadview an amount sufficient to bring current his mortgage account not later than ten days from entry of this Order; and subject to no subsequent single mortgage payment being paid later than fifteen days beyond the monthly due date. In the event of such a default, the automatic stay will be lifted upon the presentment of an affidavit to that effect by Broadview.

IT IS SO ORDERED.