In re Paul Wayne SAYLORS, Debtor.

JIM WALTER HOMES, INC.,
(FLORIDA),

v.

Paul Wayne SAYLORS and Jane K.
Dishuck, as Trustee, Defendants.

Civ. A. Nos. 87–AR–0257–S,
88–AR–0257–S.

United States District Court,
N.D. Alabama, S.D.

April 27, 1988.

Addendum to Memorandum Opinion
May 10, 1988.

---

E. Terry Brown, Copeland, Franco, Screws & Gill, PA, Montgomery, Ala., for Jim Walter Homes, Inc.

Claude Burns, Tuscaloosa, Ala., for Paul Wayne Saylors.

Jane K. Dishuck, Tuscaloosa, Ala., Trustee.

## MEMORANDUM OPINION

ACKER, District Judge.

This is an appeal from the bankruptcy court's overruling of Jim Walter Homes, Inc.'s objection to the confirmation of a plan presented by Paul Wayne Saylors in a Chapter 13 petition, Bankruptcy No. 87–11644. Saylors had previously been adjudicated a bankrupt under Chapter 7, Bankruptcy No. 87–04479, and his said Chapter

7 case had not been closed when he filed his Chapter 13 petition. In his May 20, 1987 Chapter 7 petition, Saylors had listed Jim Walter as a creditor in the sum of $65,000.00, secured by a mortgage on Saylors' residence. Saylors did not attempt to reaffirm the debt to Jim Walter in his Chapter 7 case, and on August 25, 1987, the debt to Jim Walter was discharged, together with Saylors' other dischargeable debts.

On November 24, 1987, Jim Walter, in Saylors' Chapter 7 case sought permission to foreclose its mortgage. A hearing was held on December 15, 1987, and on December 29, 1987, Jim Walter's motion to obtain relief from the automatic stay was expressly granted by the bankruptcy court. On the same day, December 29, 1987, Saylors, suddenly represented by a new bankruptcy lawyer, executed a proposed debtor's petition, and on the very next day, December 30, 1987, through his new lawyer, filed his Chapter 13 petition, in an entirely new action, listing Jim Walter as his only "creditor." The amount of the alleged debt shown in the Chapter 13 petition was $2,676.00, again secured by a mortgage on the residence. The said $2,676.00 purportedly represents an "arrearage" on the mortgage obligation. Why the debt was not shown as $65,000.00 is unexplained. The Chapter 13 petition did not mention that the Chapter 7 proceeding was still pending, nor the fact that the debt to Jim Walter, including any arrearage, had been fully discharged. Instead, the Chapter 13 petition, paragraph 8, contained the following inquiry and one-line recitation in response:

**Prior Bankruptcy.**

a. What cases under the Bankruptcy Act or Title 11, U.S.Code, have previously been brought by or against you? (State the location of the bankruptcy court, the nature and number of each proceeding, the date when it was filed, and whether a discharge was granted or refused, the proceeding was dismissed, or a composition, arrangement, or plan was confirmed.)

Chapter 7 bankruptcy in Northern District of Alabama.

This court notes the clear failure to state the date the Chapter 7 petition was filed and whether a discharge was granted or refused. Also, the petition conspicuously does not state that the Chapter 7 case **is still pending.** Perhaps this is because Saylors was here referring to the previous Chapter 7 discharge he obtained in 1972 listed in his most recent Chapter 7 petition. If so, this ambiguity raises the possibility that Saylors intended to mislead the court about his still-pending proceeding. In any event Saylors' most recent Chapter 7 case was still pending on December 30, 1987. It was, in fact, not closed until January 11, 1988, after the Chapter 7 trustee had filed a report of abandonment on January 6, 1988. That report specifically abandoned all interest in the subject residence.

Jim Walter objected to the confirmation of Saylors' Chapter 13 plan which, if confirmed, would, in practical effect, reinstate the defaulted mortgage, and would automatically stay Jim Walter's right to foreclose which had expressly been granted on December 29, 1987. On January 26, 1988, the bankruptcy court overruled Jim Walter's said objection and confirmed the plan by an order which provided, *inter alia:* (1) that after administrative expenses are paid Jim Walter will be paid $83.00 per month by the trustee toward the alleged $2,676.00 arrearage, that is, if Jim Walter files a proper proof of claim; (2) that Saylors shall pay direct to Jim Walter his regular monthly installment due on the mortgage obligation; and (3) that Saylors pay to the trustee $90.00 per month **beginning January 22, 1988.** The order was not signed until January 26, 1988, four days after January 22, 1988, so that Saylors either made his first payment to the trustee four days before he knew who and how much to pay, or he violated the order. Both the mortgage indebtedness and the arrearage were discharged as debts on August 25, 1987 in the Chapter 7 case. The record does not reflect how much of the resurrected, so-called "arrearage" accrued between August 25, 1987, the date of the discharge, and December 30, 1987, the date of the Chapter 13 filing.

On February 2, 1988, Jim Walter appealed to this court from the overruling of its objection to the Chapter 13 plan. Two weeks later, on February 16, 1988, the bankruptcy court entered "Additional Findings of Fact and Conclusions of Law." *Inter alia*, this opinion featured the fact that at the confirmation hearing held on January 22, 1988, "Jim Walter did not appear and argue its objection," whereupon "the Court overruled Jim Walter's objection and confirmed the plan." There is, of course, no rule which says that a facially valid objection to confirmation can be overruled just because the objecting party does not appear to orally argue its objection. Therefore, the reviewing court here necessarily examines the merits of Jim Walter's objection as if Jim Walter had, in fact, been present and had argued its objection on January 22, 1988, using the same arguments and authorities which it presents here. Because there were no credibility determinations by the bankruptcy court and no disputes of material fact, the only questions presented here are questions of law, and there is, therefore, no presumption in favor of the bankruptcy court's conclusions. *See, e.g., In re Fielder*, 799 F.2d 656 (11th Cir.1986).

If Jim Walter had been present on January 22, 1988, and had made the arguments contained in its brief filed with this court, it might have convinced the bankruptcy court as it has convinced this court. This court sees no purpose to be served in writing a lengthy opinion when this court agrees in most respects with Jim Walter and could well adopt Jim Walter's brief as its opinion. There are few things, however, which this court believes it should say.

## JURISDICTION

This court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1334(a).

## "CHAPTER 20"

Many bankruptcy lawyers and bankruptcy judges use the euphemism "Chapter 20" to describe the filing of a Chapter 13 after the conclusion of a Chapter 7. This is a jocular recognition of the arithmetical truth that "7 + 13 = 20." The argument goes that there is nothing in the Bankruptcy Act to prevent such a procedure. This may be true, but it is also true that there is nothing in the Bankruptcy Act which formally recognizes such a double-barreled procedure. Nevertheless, this court will assume that there is nothing inherently wrong or illegal about a so-called "Chapter 20."

## "Good Faith" and Chapter 13 Jurisdiction

In its after-the-fact opinion, the bankruptcy court enumerated the factors in *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983), and found that Saylors' Chapter 13 petition was filed in good faith because of an "increase in disposable income," and because of the "length and purpose of the plan," even though the bankruptcy court also found that "it is undisputed that the sole reason for the Debtor's Chapter 13 petition was to prevent the loss of the Debtor's residence." The bankruptcy court did not discuss other *Kitchens* factors, itemized in a footnote to its opinion, such as:

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

\* \* \* \* \* \*

(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

\* \* \* \* \* \*

(12) the type of debt to be discharged;

\* \* \* \* \* \*

(13) whether the debt would be dischargeable under a Chapter 7;

702 F.2d at 888–889.

The Eleventh Circuit was the first court of appeals to recognize the "good faith" prerequisite implicit in the filing of a Chapter 13 bankruptcy petition. *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984); *In re Waldron*, 785 F.2d 936 (11th Cir.1986); and *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987). This court has severe doubt about Saylors' "good faith" if all of the *Kitchens* factors were weighed here. However, even if the bank-

ruptcy court were correct in its use of far less than all of the *Kitchens* factors (which this court thinks it was not), the *Kitchens* factors are not exclusive. In this case there are undisputed facts which, when considered in addition to the *Kitchens* factors, prove a lack of "good faith" as a matter of law, and preclude what Saylors did on December 30, 1987. The Bankruptcy Code, 11 U.S.C. § 1322(b)(2), forbids a Chapter 13 plan which purports to modify the rights of a creditor "secured only by a security interest in real property, that is the debtor's principal residence." This statutory provision has been held not to apply to a modification which only deals with the curing of a default. *In re Cheeks*, 24 B.R. 477 (M.D.Ala.1982). This court is not here called upon to agree or to disagree with *Cheeks*, because *Cheeks* is clearly distinguishable. In the instant case Saylors' Chapter 13 petition was filed **while his Chapter 7 case was still pending;** and it was filed in the very teeth of a one-day old order by the same bankruptcy court allowing Jim Walter to foreclose because of the long-standing default on a fully discharged debt. Saylors did not even attempt to reaffirm the debt in his Chapter 7 proceedings, nor did he attempt to convert his Chapter 7 into a Chapter 13, as provided under 11 U.S.C. § 706. Instead, he blithely ignored his own pending Chapter 7 and the last and most material, solemn adjudication entered in it. It should not be necessary to cite authority for the proposition that a debtor cannot have two voluntary bankruptcy cases pending simultaneously. Although the court believes that no citation is necessary for such a logical proposition, the court has found a case which recognizes the obvious. *Norton v. Hoxie State Bank*, 61 B.R. 258 (D.C.Kan.1986), states the proposition thusly:

> [A] debtor cannot properly be in more than one bankruptcy proceeding at one time. See *Prudential Ins. Co. of America v. Colony Square Co.*, 29 B.R. 432 (W.D.Pa.1983).

61 B.R. at 261. *See also Associates Financial Services Corp. v. Cowen*, 29 B.R. 888 (Bkrtcy Ohio 1983) (Debtors may not maintain simultaneous proceeding under Chapter 7 and Chapter 13).

To compound the anomaly, not only did Saylors purport to file a Chapter 13 before his Chapter 7 case had been concluded, but the necessary effect of the purported automatic stay in Chapter 13 was collaterally to attack and to overrule Jim Walter's right to foreclose, granted by express decree only one day previously in another still-pending bankruptcy case. If the bankruptcy court's granting of the right to foreclose was erroneous, there were procedures in the Chapter 7 case for rectifying the error. The truth is, however, that the bankruptcy court was not in error when it granted Jim Walter's right to foreclose. The truth is that Saylors was poised on December 29, 1987, to execute his "end run" around the bankruptcy court. Whether or not this "end run" was with the cooperation of the very same bankruptcy court is impossible to ascertain.

Not only was Saylors not acting in "good faith" on December 30, 1987, but the bankruptcy court lacked jurisdiction to entertain a separate Chapter 13 petition while the Chapter 7 proceeding was pending.

### Did Saylors Have an Interest in his Residence Which Could be Protected in a Chapter 13?

■ The bankruptcy court found that the mere fact that Saylors was still in possession of his house created an "equitable" interest which was protectable property of the "estate" as "estate" is defined in 11 U.S.C. § 541(a)(1). There is an important difference between "possession" and a "possessory interest." A trespasser has "possession" of the piece of real property upon which he trespasses. He has no "possessory interest" in it. Saylors' "possession" was not as a trespasser, but it is closely akin to the "possession" which Honorable E.B. Haltom, Jr. of this court found not to create an "equitable" interest recognizable under Chapter 13. Judge Haltom's *In re Sturdivant*, CV 85–HM–2135–W, decided on February 28, 1986, dealt with facts strikingly similar to the facts in Saylors' case. Rather than to quote extensively from *Sturdivant*, this court attaches the

*Sturdivant* opinion as Exhibit "A" and adopts it. Although *Sturdivant* deals with a debtor's possession of furniture subject to a lien securing a debt previously discharged in Chapter 7, and not possession of real property under similar circumstances, the facts are otherwise nearly identical, and the theory of "possession" and "security" under Alabama title law as between real property and personal property is not sufficiently dissimilar to make the *Sturdivant* reasoning not here applicable. And, if *Sturdivant* is distinguishable, it is in Jim Walter's favor, because in *Sturdivant* the alleged "creditor" was denied a right to foreclose its lien in a Chapter 7 **after** failing to appeal from an overruled objection to the confirmation of a Chapter 13 plan. Jim Walter's procedural posture is more favorable, having objected in the Chapter 13 proceedings as required under 11 U.S.C. § 1324, and having taken an immediate appeal from that unfavorable ruling.

Applying *Sturdivant* to the Saylors facts, Saylors had no true "possessory" or "equitable" interest in his residence at the time his Chapter 13 petition was confirmed on January 26, 1988. Any and all interest by Saylors, except his Alabama statutory right to redeem after foreclosure, ceased to exist upon the granting of Jim Walter's right to foreclose on December 29, 1987. And, if any "possessory interest" did remain, it surely disappeared on January 6, 1988, when the Chapter 7 trustee formally abandoned the property. In the abandonment report filed on January 6, 1988, the trustee pointedly said, *inter alia:*

> The Trustee reports that he has in actual or constructive **possession** the following property....
>
> \*     \*     \*     \*     \*     \*
>
> House and approximately 5 acres
>
> \*     \*     \*     \*     \*     \*
>
> I deem **abandoned** any and all property of the estate that is unadministered as of the date of this report.

(emphasis supplied).

Whatever "possession" of the residence Saylors had on January 6, 1988, was held **constructively** by his trustee, and upon abandonment, **evaporated.**

### What About Chapter 13's Three–Year Time Limitation?

■ A Chapter 13 "plan may not provide for payments over a period that is longer than 3 years...." 11 U.S.C. § 1322(c). Here the decree entered by the bankruptcy court on January 26, 1988 ordered, *inter alia*, "that the regular monthly payment to Jim Walter Homes [on the mortgage?] is to be paid direct by debtor to creditor." Assuming a principal balance of $68,000.00 on the mortgage, as stated in Saylors' Chapter 7 petition, compliance with the order of January 26, 1988, insofar as it requires the regular installments on the former indebtedness to be paid, will obviously take much longer than 3 years. Further, the assumption that there was any principal balance on the mortgage is erroneous, because the "debt" was discharged on August 25, 1987. As of August 25, 1987, Saylors was no longer a "debtor," and Jim Walter was no longer a "creditor."

It becomes even more obvious, then, that the Chapter 13 proceeding was here intended indirectly to reinstate the defaulted mortgage and set aside the Chapter 7 decree entered on December 29, 1987, without saying so. If the bankruptcy court were affirmed, this abusive intention would be realized.

### What, Exactly, Was Required of Jim Walter?

In its after-the-appeal opinion, the bankruptcy court pointed out that the automatic stay against Jim Walter was lifted by the discharge entered on August 25, 1987. This may indicate a belief by the bankruptcy court that the order of December 29, 1987, granting Jim Walter the right to foreclose, was no more than a redundancy. The court trusts that the bankruptcy court did not mean to punish Jim Walter for not immediately beginning foreclosure proceedings on August 26, 1987, without obtaining the express permission of the bankruptcy court. If Jim Walter had done as the bankruptcy court impliedly suggests, the Chapter 13 episode may not have occurred, be-

cause the foreclosure sale would have taken place long before December 30, 1987. Jim Walter should not be punished or prejudiced by its deference to the bankruptcy court and to the debtor. This court knows of no principle of law which says that a three-month wait destroys the right to foreclose.

## CONCLUSION

Nothing really changed on December 29, 1987, except Saylors' mind and his lawyer. These two changes are not enough to justify the indirect repudiation of an adjudication in favor of Jim Walter by a court of competent jurisdiction, even though it was the same court. Bankruptcy courts are courts of equity. There is an equitable principle which says that a person cannot be allowed to do indirectly what he cannot do directly. This principle fits Mr. Saylors' actions.

For the foregoing separate and several reasons, the bankruptcy court's decree of January 26, 1988, will be reversed by separate order and the case remanded with instructions.

## EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION

NO. CV 85–HM–2135–W

IN RE: GLENDA ANNE MAYE STURDIVANT, Debtor.

FIRST FAMILY FINANCIAL SERVICES, INC., Appellant,

-v-

GLENDA ANNE MAYE STURDIVANT, Appellee.

MEMORANDUM OF DECISION

HALTOM, District Judge.

The above entitled civil action is before the Court on appeal from the United States Bankruptcy Court for the Northern District of Alabama, Western Division. The relevant facts giving rise to this appeal are as follows:

The debtor, Glenda Anne Maye Sturdivant (Sturdivant) purchased furniture from Ward's Furniture Liquidators on November 26, 1982, with money loaned her by Gulf Finance. The total price of the furniture was $3,973.68, of which Gulf Finance financed $2,922.35, taking a purchase money security interest therein. On August 6, 1984, Sturdivant filed a Chapter 7 bankruptcy petition. The appellant, First Family Financial Services, Inc. (First Family), formerly Gulf Finance, was a creditor in the Chapter 7 proceeding and was owed approximately $2,250.00. During the proceeding, Sturdivant neither reaffirmed the debt owed to First Family nor redeemed the furniture because they could not agree upon the terms of a reaffirmation agreement nor the amount to be paid to redeem the furniture. Sturdivant retained possession of the furniture throughout the Chapter 7 proceeding, claiming it as exempt. The stipulated value of the furniture was $1,000.00. Sturdivant received a discharge in her Chapter 7 "no asset" case on December 4, 1984.

On January 11, 1985, First Family filed a complaint in detinue in state court, seeking to recover the furniture from Sturdivant. First Family also claimed damages in the amount of $1,876.46 for "the amount left owing under said Security Agreement" (i.e., the agreement to loan money to Sturdivant for the purchase of the furniture in question in return for a purchase money security interest therein). Sturdivant subsequently filed a Chapter 13 petition on February 25, 1985, which caused the detinue action to be dismissed. In her Chapter 13 petition, Sturdivant listed the claim of First Family as secured in the amount of $1,000.00. First Family was duly listed in the debtor's schedules and in the matrix. Sturdivant claimed the furniture as exempt and stated that she would reaffirm the debt. The furniture was included by the bankruptcy court in the Chapter 13 estate, at a fair market value of $1,000.00. A confirmation hearing on Sturdivant's Chapter 13 plan was set for March 25, 1985, of which First Family was sent notice. First

Family did not attend the creditor's meeting. No objection was made to the debtor's proposal at the confirmation hearing, and the bankruptcy judge confirmed the debtor's plan and allowed a preference to First Family of $20.00 per month upon its filing of a proper secured claim for approximately $1,000.00. The bankruptcy court entered its confirmation order on March 25, 1985. First Family failed to appeal the confirmation order within ten days after its entry.

On April 4, 1985, First Family filed a motion to lift the bankruptcy stay so that it could pursue its detinue action or, alternatively, to order the debtor to turn over the furniture to First Family. It contended that because Sturdivant did not reaffirm the debt owed to First Family nor redeem the furniture in her Chapter 7 case and because she has no equity in the collateral, the furniture is not property of her Chapter 13 estate. First Family also contended that because Sturdivant's debt to it was discharged in the Chapter 7 case, it had no "claim" to allow it to file a proof of claim. First Family also alleged that the confirmed plan did not fulfill the requirements of 11 U.S.C. § 1325(a)(5) that an interest factor be allowed on secured claims. The bankruptcy court denied the motion to lift stay on April 20, 1985. On May 8, 1985, First Family filed a motion for stay pending appeal, requesting the court to order Sturdivant not to sell, transfer or otherwise dispose of the furniture pending this appeal. On May 30, 1985, the bankruptcy court denied First Family's motion.

First Family filed a notice of appeal of the denial of its motion to lift stay on May 8, 1985 and timely designated the issues on appeal as follows:

1. Whether upon receiving a discharge in her Chapter 7 Bankruptcy proceeding Debtor retained any legal or equitable interest in the furniture which is subject to a purchase money security interest securing the claim of First Family in the Chapter 7 Bankruptcy for which the Debtor had elected to neither redeem

said items nor obtain a consensual reaffirmation of the indebtedness with First Family.

2. Whether after the discharge entered in the Chapter 7 Bankruptcy of Glenda Anne Maye Sturdivant and the resulting extinguishment of the indebtedness which had arisen from the purchase money sales contract and security agreement between Debtor and First Family, the furniture, which serves as collateral for said purchase money contract and which was after discharge held in wrongful possession by Debtor, constituted property of the estate of the Debtor in her subsequently filed Chapter 13 Bankruptcy, thereby granting the Bankruptcy Court with jurisdiction to enjoin recovery of said furniture by First Family.

The bankruptcy court decided questions of law in the proceeding below. Such conclusions of law are subject to a de novo standard of review. *In re Global Western Development Corp.*, 759 F.2d 724 (9th Cir. 1985).

The first issue this Court will address is whether the debtor retained any legal or equitable interest in the furniture upon her Chapter 7 discharge in bankruptcy. Upon commencement by debtor of her Chapter 7 bankruptcy case, First Family had a lien[1] on the furniture that is the subject of the dispute herein. The definition of lien includes a purchase money security interest such as First Family held in the furniture. The Bankruptcy Code allows a debtor to reaffirm an existing debt prior to his discharge in bankruptcy. 11 U.S.C. § 524(c). Section 722 provides that a debtor may redeem personal property from a lien by paying the lienholder the amount on the allowed secured claim or the fair market value, whichever is less. *In re Fitzgerald*, 20 B.R. 27 (Bktcy.D.N.Y.1982). In this case, Sturdivant neither reaffirmed the debt owed to First Family, nor did she redeem the furniture. After the Chapter 7 discharge, Sturdivant was no longer personally liable on the debt to First Family, but First Family did retain the right to

---

**1.** "Lien" is defined in the Bankruptcy Code as a "charge against or interest in property to secure

payment of a debt or performance of an obligation." 11 U.S.C. § 101(31).

enforce its security interest. 11 U.S.C. § 522(c)(2) provides that a lien may be enforced against exempt personal property providing such lien was not avoided under specified sections of the Code or voided under § 506(d). Sturdivant's debt does not fall within any of the categories set out in § 522(c)(2); therefore, First Family had the right, subsequent to Sturdivant's bankruptcy discharge, to enforce its lien against the furniture. *See In re Bell*, 700 F.2d 1053 (B.A.P. 6th Cir.1983); *In re Sams*, 16 B.R. 47 (Bkrtcy.N.D.Ohio 1981). Since Sturdivant refused to release the furniture to First Family voluntarily, First Family instituted a detinue action in Sumter County, Alabama, Circuit Court. The Court notes here that First Family's claim for monetary damages, in addition to the furniture, in the detinue action was improper and a violation of § 524(a)(2), which relieves the debtor from personal liability on a discharged debt. However, First Family was within its rights in seeking to recover the furniture itself, as Sturdivant retained no legal or equitable interest in the furniture. At this point, Sturdivant filed her Chapter 13 petition, bringing into play the automatic stay of § 362, specifically §§ 362(a)(3) and (4). First Family filed a motion to lift the automatic stay within ten days after confirmation of the debtor's Chapter 13 plan, which plan listed First Family as a creditor, allowing it a preference upon filing of proof of claim. First Family contends that the bankruptcy court improperly included the furniture in the property of the debtor's Chapter 13 estate, since the right to possession of the furniture revested in First Family upon Sturdivant's Chapter 7 discharge. That property which may be included in a bankrupt's estate is set out in 11 U.S.C. § 541, to include "all legal and equitable interests of the debtor in property as of the commencement of the case." The bankruptcy court, relying on *In re Quick Catering Co.*, 10 B.R. 250 (Bkrtcy. D.Nev.1981) and *In re Beavers*, 26 B.R. 502 (Bkrtcy.N.D.Ala.1983), found that mere possession of the furniture by Sturdivant established an equitable interest therein, allowing it to be property of the estate. This Court concludes and specifically holds that inclusion by the bankruptcy court of the furniture in Sturdivant's Chapter 13 estate was erroneous. The bankruptcy court was bound to look to state law to determine ownership of the furniture. *In re Golden Plan of California, Inc.*, 37 B.R. 167, 169 (Bkrtcy.E.D.Cal.1984). Alabama law provides that upon default, title and right to possession of consumer goods securing a purchase money security interest vests in the secured party. *Ala.Code* § 7-9-403 (1984 Supp.). Sturdivant was in default at the time of filing of her Chapter 7 petition. As discussed earlier, title and right to possession vested in First Family upon Sturdivant's Chapter 7 discharge. Therefore, Sturdivant did not retain any legal or equitable interest in the furniture that would justify its inclusion as property of debtor's Chapter 13 estate. See *In re GSVC Restaurant Corp.*, 3 B.R. 491, 494 (Bkrtcy.S.D.N.Y.1980); *In re Scarsdale Tires, Inc.*, 47 B.R. 478 (Bkrtcy.S.D.N.Y. 1985); *In re Acorn Investments*, 8 B.R. 506 (Bkrtcy.S.D.Cal.1981). Further support for this Court's conclusion is found in *In re Bell, supra*, where the court stated that a debtor unable to reaffirm a debt or redeem collateral may nevertheless retain possession of that collateral by filing a Chapter 13 petition or by converting a Chapter 7 case to Chapter 13. 700 F.2d at 1057.

Sturdivant contends that First Family is bound by the provisions of her Chapter 13 plan as the plan was confirmed by the bankruptcy court and is binding on all creditors pursuant to 11 U.S.C. § 1327. While it is true that § 1327 makes a confirmed Chapter 13 plan binding on debtor and all creditors, this section is not applicable to First Family. The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(9)(A). "Claim" means:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach

gives rise to a right to a payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(4). It is clear that at the time of commencement of Sturdivant's Chapter 13 petition, First Family was not a creditor. It had no right to payment from Sturdivant, nor did it have an equitable remedy for breach of performance giving rise to a right of payment. First Family had no claim for which it could file a proof of claim in the Chapter 13 case. It had title in and a right to immediate possession of the furniture, enforceable by court action. The bankruptcy court should have granted First Family's motion to lift the automatic stay and erred to reversal by not doing so.

In sum, this Court finds that Sturdivant neither reaffirmed the debt owed First Family, redeemed the furniture, nor surrendered possession of the furniture to First Family. Upon Sturdivant's Chapter 7 discharge, title and right to possession of the furniture vested in First Family, enforcement of which was proper through detinue action. Since debtor no longer had any legal or equitable interest in the furniture, the bankruptcy court was wrong to include it as property of Sturdivant's Chapter 13 estate, subject to the automatic stay. First Family, no longer having a right to payment from Sturdivant after her Chapter 7 discharge, had no claim for which to file a proof of claim, and, therefore, was not a creditor of Studivant at the time she filed her Chapter 13 petition. Since First Family is not a creditor, it is not bound by the provisions of the confirmed Chapter 13 plan. The decision of the bankruptcy court denying First Family's motion for relief from the § 362 stay is due to be reversed and the case remanded for further proceedings consistent with this memorandum of decision. A separate order will be entered contemporaneously herewith.

### ADDENDUM TO
### MEMORANDUM OPINION

[8] After this court's memorandum opinion was entered on April 27, 1988, in the above-entitled appeal from the bankruptcy court, it was pointed out to the court that the portion of the opinion entitled "What About Chapter 13's Three–Year Time Limitation?" may be susceptible to being interpreted to indicate a belief by this court that debtors with long-term obligations secured by real or personal property can never be eligible for Chapter 13 relief because such debts cannot be paid off within the period of three years allowed for completion of a Chapter 13 plan. The court does not hold this belief and did not intend to impart such a belief. That portion of the opinion of April 27, 1988, was limited to the unique facts of this case.

A so-called "Chapter 20" consists of a Chapter 7 followed by a Chapter 13, **without overlap.** If there is another instance within the Northern District of Alabama in which a Chapter 13 was filed by a debtor and a Chapter 13 plan presented while the same debtor still had a pending Chapter 7 case, this court has not found it. This point may be repetitive, but it establishes the procedural posture in which Jim Walter was formally granted its right to foreclose in Saylors' Chapter 7 case, a fact which necessarily meant that Jim Walter had effectively accelerated Saylors' debt, which thereupon became fully due and payable. In other words, this is not a case in which the only sum past due and payable by a debtor on his long-term secured obligation when he files a Chapter 13 petition is a relatively small arrearage or a delinquent amount which can readily be repaid during less than a three-year repayment schedule. Also, the usual Chapter 13 confirmation order in a so-called "Chapter 20" under similar circumstances not only deals with a simple arrearage and not with a fully accelerated debt, but expressly provides, in regard to the periodic payments provided in the amortization schedule as if the debt were not accelerated, that if the debtor misses any future payment, his Chapter 13 case will be automatically dismissed, the stay lifted and a foreclosure proceeding forthwith allowed. The Chapter 13 decree in this case neither acknowledged the fact

that the entire $65,000 debt was already due and payable (perhaps implying its "de-acceleration" without any prior hearing or formal order in the Chapter 7 case), nor gave Jim Walter any reason to believe that Saylors' Chapter 13 plan could not later be amended to take care of a possible new arrearage and to add a new schedule of repayment in the event Saylors should fall down on his newly ordered "regular" payments on the impliedly reinstated mortgage. There may be a proceeding by which the bankruptcy court can reverse itself and set aside an order which recognizes that the entire debt is due, but such an adjudication cannot occur by inference or by accident in an entirely separate case.

It is only because Saylors' full mortgage debt was either discharged or was fully due and payable that this court questions the propriety of the Chapter 13 order which required "regular payments" that would exceed three years. If the debt was properly accelerated, as it obviously must have been in this case, there was no possibility that the entire debt could be paid within the three-year period allowed by Chapter 13. In neither Saylors' Chapter 7 nor his Chapter 13 did the bankruptcy court either purport to reinstate the debt to Jim Walter according to its original terms or purport to set aside Jim Walter's acceleration of the debt.

This addendum may serve as a clarification of this court's opinion of April 27, 1988.