**In re Edward J. LEWIS and Henrietta B. Lewis, Debtors.**

**Bankruptcy No. 86–00514G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 18, 1986.

Arthur P. Liebersohn, Philadelphia, Pa., for debtors.

Robert Braverman, Kasen & Kasen, Cherry Hill, N.J., for mortgagee, Finance One Mortgage of Pennsylvania, Inc.

James J. O'Connell, Philadelphia, Pa., Standing chapter 13 trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The debtors received a chapter 7 discharge some years ago. While their personal liability arising out of a mortgage on their home has been discharged, arrearages on their mortgage have since accrued and the issue confronting us is whether they may propose a confirmable plan under chapter 13 to satisfy those arrearages. We conclude that they may.

The facts of this controversy are as follows:[1] The debtors granted a mortgage on a parcel of realty to Finance One Mortgage of Pennsylvania, Inc. ("Finance"), in 1982. Two years later the debtors filed with this court a petition for liquidation under chapter 7 of the Bankruptcy Code ("the Code"). In the schedules accompanying their petition, the debtors listed the obligation to Finance as a secured debt. In due time we entered an order relieving the debtors of their dischargeable debts and shortly thereafter the case was closed.

Several months ago the debtors filed a petition for the adjustment of their debts under chapter 13 of the Code. In the debtors' schedules, Finance was again listed as a secured creditor. The chapter 13 plan filed by the debtors has proposed full payment to all secured creditors. Finance filed a motion requesting relief from the automatic stay or, in the alternative, dismissal of the chapter 13 case. Finance predicates its motion on the allegation that the discharge issued in the prior chapter 7 case extinguished the debtors' obligation to Finance, and that in the absence of a debt owed by the debtors to Finance, the automatic stay is no bar to any action by Finance against the property.

The passage of the Bankruptcy Act of 1978 heralded a significant departure from the prior bankruptcy statute, —the Bankruptcy Act of 1898 ("the 1898 Act"). One major change was in the definition of "a claim." In the liquidation provisions under the 1898 Act, the term "claim" was not interpreted, although a debt was defined to "include any debt, demand, or claim provable in bankruptcy." § 1(14) of the 1898 Act; former 11 U.S.C. § 1. The contours of provability were outlined in § 63. Former 11 U.S.C. § 103; see also, *Breezewood Acres, Inc.*, 28 B.R. 32 (Bankr.M.D.Pa. 1982). In the so-called "chapter" proceedings, such as chapter X, XI, XII and XIII, the term "claim" was defined more broadly. For instance, a claim in chapter XI was defined as follows:

(2) "debts" or "claims" shall include all unsecured debts, demands, or claims of whatever character against a debtor, whether or not provable as debts under section 63 of this Act and whether liquidated or unliquidated, fixed or contingent.

Section 307(2); former 11 U.S.C. 707(2). Under the wage earner repayment provisions of chapter XIII it was defined as follows:

(1) "claims" shall include all claims of whatever character against the debtor or his property, whether or not provable as debts under section 63 of this Act and whether secured or unsecured, liquidated or unliquidated, fixed or contingent, but shall not include claims secured by estates in real property or chattels real.

Section 606(1); former 11 U.S.C. § 1006(1).

In 1977 and 1978, the House of Representatives proposed H.R. 8200 for passage as the new bankruptcy statute. Section 101(4) of H.R. 8200 stated as follows:

(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance *if such breach does not give rise to a right to payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

H.R. 8200, 95th Cong., 1st Sess. § 101(4), reported as amended September 8, 1977 (emphasis added). The legislative history of this provision conveys the breadth of the proposal:

Paragraph (4) defines "claim." The effect of the definition is a significant

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

departure from present law. Under present law, "claim" is not defined in straight bankruptcy. Instead it is simply used, along with the concept of provability in section 63 of the Bankruptcy Act, to limit the kinds of obligations that are payable in a bankruptcy case. The term is defined in the debtor rehabilitation chapters of present law far more broadly. The definition in paragraph (4) adopts an even broader definition of claim than is found in the present debtor rehabilitation chapters. The definition is any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured. The definition also includes as a claim an equitable right to performance that does not give rise to a right to payment. By this broadest possible definition, and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 6266. The proposal advanced by the House was, however, approved only after modifications, which were ultimately adopted as follows:

In this title:

 \* \* \* \* \* \*

(4) "claim" means—

 (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured; or

 (B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contin-

gent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(4) (emphasis added). Thus, all legal obligations of the debtor are claims. Furthermore, all equitable obligations are likewise claims *if* the equitable obligation gives rise to a right of payment. 2 *Collier on Bankruptcy*, 101–16.4 (15th ed. 1985).

 In light of the breadth of the definition of the term "claim", we hold that a claim may include a creditor's encumbrance against property of the estate although there is no in personam liability against the debtor. This would, of course, include the situation presented in the instant case. Since § 101(4) applies to chapters 7, 11 and 13, such an obligation would be a claim in any of these chapters. 11 U.S.C. § 103.

 Since the debtors' obligation to Finance is a claim, the debtors may provide for payment of that claim in a chapter 13 plan. In the plan, the debtors have proposed the payment of the full value of the claim. Finance has not asserted that the debtors are in default under the terms of the plan.

 On another front, Finance asserts that under the facts of this case the automatic stay does not bar Finance from foreclosing its mortgage in the property. It predicates this conclusion on the bases that there is no claim owed to Finance and that only "creditors" are barred by the automatic stay. Contrary to Finance's belief, the automatic stay bars a wide range of activities which are enumerated at 11 U.S.C. 362(a). A survey of that provision reveals that many parties who are not creditors are barred from certain actions. For instance, § 362(a)(3) enjoins "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." More particularly, the automatic stay bars the enforcement of any lien or mortgage against property of the estate or the debtor. § 362(a)(4) and (a)(5); 11 U.S.C. 101(31) (lien defined). Consequently, the automatic stay bars Finance from foreclosing its

mortgage without relief from the automatic stay.

 Fearing that we might conclude that the automatic stay applied, Finance has argued in the alternative that relief from the stay should be granted, or the case dismissed due to the debtors' bad faith in filing a chapter 13 petition within two years of the filing of a chapter 7 petition. Assuming that bad faith is grounds for dismissal of the case or the granting of relief from the automatic stay, such a finding is particularly within the purview of the bankruptcy court, and none is apparent to us.[2] *Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584 (3d Cir.1985); J. Murphy, *Bankruptcy Court Power Affirmed,* Pa. Law Journal-Reporter, Dec. 9, 1985, p. 1.

Since we conclude that there is no basis for dismissal of the case or modification of the automatic stay, we will deny Finance's motion requesting such relief and will enter an order accordingly.

**2.** Hoping to avert our above conclusions, Finance cites three cases in support of its position, the first of which is *In Re Brown,* 52 B.R. 6 (Bankr.S.D. Ohio 1985). In *Brown,* the debtor had previously received a discharge in a chapter 7 case, and later filed a chapter 13 petition and plan which were the subject of the court's scrutiny. A mortgagee, whose personal claim against the debtors was extinguished by the chapter 7 discharge, filed an objection to confirmation of the debtors' chapter 13 plan. The court held that the mortgagee did not hold a claim against the debtor within the meaning of 11 U.S.C. § 101(9). The court sustained the objection on the questionable basis that the "debtor gave every indication in her prior case that there was no objection to relinquishment of the real estate." The court stated that, "There is authority that redemption and reaffirmation constitute the exclusive methods for retention of possession of secured collateral upon bankruptcy." *Brown,* 52 B.R. at 7, *citing, In Re Bell,* 700 F.2d 1053 (6th Cir.1983). The court ordered dismissal of the case unless the debtor filed an amended plan within 20 days. The court also acknowledged that the automatic stay barred the mortgagee from foreclosing.

A second case cited by Finance, is essentially identical to *Brown. Manufacturer's Hanover Mortgage Corp. v. Fryer (In Re Fryer),* 47 B.R. 180 (Bankr.S.D.Ohio 1985). The third case differs in that the debtor first filed a chapter 7 petition, and while that case was pending, filed a chapter 13 petition. *In Re Heywood,* 39 B.R. 910 (Bankr.W.D.N.Y.1984). The court dis-

missed the chapter 13 case on the basis that it was filed in bad faith in that the previously filed chapter 7 would allow the debtor to propose a "zero payment" plan in the chapter 13 proceeding.

As we stated earlier in our opinion, we disagree with the conclusion reached in *Brown* that an in rem obligation is not a claim. Secondly, we also disagree on the conclusion in Brown that "redemption and reaffirmation constitute the exclusive methods for retention of possession of secured collateral upon bankruptcy." *Brown,* 52 B.R. at 7. If the debtor is not in default under a mortgage or security agreement, neither redemption nor reaffirmation is necessary for retention of the property. So long as the debtor's exemption covers any equity in the property, the maintenance of payment and the absence of other defaults are generally sufficient.

The result in *Heywood* is no longer a compelling conclusion since the passage of the Bankruptcy Amendment and Federal Judgeship Act of 1984. Prior to the amendment, many courts allowed "zero payment" plans for unsecured creditors. This abuse has been minimized by the amendment to 11 U.S.C. § 1325(b)(1)(B) which provides that all of a debtor's projected disposal income for the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.