**In the Matter of Timothy C. HAGBERG and Callie J. Hagberg, Debtors.**

**Bankruptcy No. MM13–88–00348.**

United States Bankruptcy Court, W.D. Wisconsin.

Oct. 12, 1988.

Michael J. Rynes, Community Law Services, Madison, Wis., for debtors.

Catherine J. Furay, Axley Brynelson, Madison, Wis., for First Federal Sav. & Loan.

William A. Chatterton, Madison, Wis., Trustee.

## MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Chief Judge.

This case raises issues involving the proper use of a chapter 13 plan after a completed chapter 7 liquidation. First Federal Savings and Loan Association of Madison (the "Bank"), the mortgagee of the debtors' homestead, has objected to the confirmation of the debtors' chapter 13 plan and has moved for the dismissal of the case. The Bank complains that because the debt owed to the Bank was discharged in the prior chapter 7 case, it no longer is a "creditor" of the debtor; therefore, any treatment under the plan of the Bank's *in rem* claim against the debtors' homestead renders the plan statutorily defective. Alternatively, the Bank argues that the plan's treatment of its claim in light of, *inter alia,* the serial filing of chapter 13 petitions by this debtor requires a finding that the plan was proposed in bad faith.

The Bank and the debtors commenced their ill-fated relationship in March of 1978 when the Bank advanced $24,700.00 to the debtors for the purchase of their residence and took a mortgage on the property as security. The first in a long series of defaults resulted in the Bank instituting foreclosure proceedings on February 20, 1985. Foreclosure was averted when the debtors cured the arrearages about one month later.

The debtors again defaulted, and the Bank, on January 1, 1986, sent notice to them of their right to cure the default. The debtors' chapter 7 petition followed on February 14, 1986. The Bank's motion for relief from the automatic stay, filed on March 3, 1986, was denied on the condition that the debtors cure the $1,992.04 of prepetition defaults through installment payments. When the debtors failed to make the required payments, the Bank was relieved from the effects of the stay. On May 30, 1986, the debtors were granted a discharge. The debtors did not attempt to reaffirm the debt owed to the Bank, nor did they seek to redeem the property.

The Bank then returned to state court and, on June 6, 1986, commenced their second foreclosure action against the debtors. On July 8, 1986, before any action on the Bank's complaint had been taken, the debtors filed a chapter 13 petition. The debtors' plan proposed to pay $100.00 per month to the trustee to cure the arrearages on the Bank's mortgage, and to continue the contractual payments on the mortgage outside the plan. The Bank apparently did not object to the confirmation of the plan on the grounds it now asserts. And apparently, from the time of this chapter 13 petition up to January or April of 1988, the Bank had accepted payments of principal and interest on the mortgage debt; this in spite of the intervening bankruptcy proceedings.

On November 14, 1986, the Bank moved for dismissal on the grounds that the debtors had failed to make the payments under the plan. The court stayed dismissal for fifteen days to allow the debtors to bring the payments current, which the debtors then did. Some three months later, the debtors again failed to make their payments under the plan, and, on March 3, 1987, the Bank moved for dismissal. Cure of the default by the debtors on the following day mooted the Bank's motion. On May 15, 1987, the debtors having for the third time missed a plan payment, the Bank filed another dismissal motion, which the court granted on July 14, 1987.

The Bank returned to state court, and obtained an order setting September 8, 1987, as the date for a hearing on the Bank's motion for default judgment on its foreclosure claim. The debtors, however, again interposed a chapter 13 petition between the Bank and its state court action. Because this second chapter 13 petition was filed but fifty-one days after dismissal of the first chapter 13 petition, the Bank's motion for dismissal, brought under section 109(g)(1), was granted by the court on October 17, 1987.

The Bank made its final trek to state court on November 24, 1987. On that date, the Circuit Court for Dane County entered a judgment of foreclosure by default on the Bank's mortgage. The circuit court found that balance due and owing on the mort-

gage note was approximately $21,000.00 plus interest, costs, and attorney fees. A sheriff's sale of the property was set to be held in six months.

On February 19, 1988, the debtors filed their third chapter 13 petition. The only scheduled creditor was the Bank, although eight other unsecured claims have been filed and the trustee's report indicates that ITT holds a second mortgage on the homestead. The debtors scheduled the Bank as holding an unsecured claim for $4,588.00, that being the amount of arrearages on the mortgage. The Bank filed a secured claim for $26,249.79. In the plan which is now before the court, the debtors propose to deaccelerate the Bank's foreclosed mortgage, to cure the arrearages on the mortgage note through payments of $216.67 per month to the trustee, and to reinstate the contractual payment schedule of $294.00 per month. The Bank had objected to confirmation of the plan and has moved to have the petition dismissed.

I. Cure of Discharged Mortgage Debt

It is now well settled that a chapter 7 discharge eliminates the debtors' *in personam* liability on a secured debt while the *in rem* liability of the property held as security is unaffected and may be enforced by the mortgagee postdischarge. *See In re Lindsey*, 823 F.2d 189, 191 (7th Cir.1987) (after debtor mortgagor is discharged in chapter 7, mortgagee can foreclose defaulted mortgage); *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir.1986) (secured creditor not barred by discharge injunction of section 524(a)(2) from enforcing *in rem* obligation after debtor's discharge). Thus, if the mortgage debt is in default prior to the chapter 7 filing, or goes into default subsequently, the chapter 7 discharge will not prevent foreclosure of the mortgage. The discharge only protects the debtor from the entry of a deficiency judgment should the collateral be insufficient to satisfy the debt. *In re Mitchell*, 81 B.R. 171, 173 (Bankr.D.C.1988). Similarly, there is no controversy that the debtor can avert foreclosure in such a situation either by a predischarge redemption of the encumbered property or a reaffirmation of the

mortgage debt, *see In re Bell*, 700 F.2d 1053, 1056 (6th Cir.1983), which preserves the debtor's personal liability in spite of the discharge. A third possible method is the novation of the mortgage debt and the creation of a new obligation in its place. *See In re Fryer*, 47 B.R. 180 (Bankr.S.D. Ohio 1985). If the debtor is not in default prior to the chapter 7 discharge, he can retain the collateral simply by keeping the contractual payments current. *See In re Lewis*, 63 B.R. 90, 93 n. 2 (Bankr.E.D. Pa.1986). There is considerable uncertainty, however, over whether a debtor, who has defaulted either before or after the discharge and who has neither redeemed nor reaffirmed prior to discharge, can avoid enforcement of the mortgagee's security interest through the use of a chapter 13 petition and plan to cure the arrearages on the mortgage debt.

Chapter 13 enables a mortgagor/debtor to decelerate a mortgage debt upon which there had been a prepetition default. *In re Clark*, 738 F.2d 869, 874 (7th Cir.1984). Under his plan, the debtor may "cure" the default by paying off the amount of the default and reinstating the contractual payments of principal and interest. *Id.* Where the prepetition arreages involve a *discharged* mortgage debt, however, the mortgagor/debtor's use of chapter 13 arguably is improper.

Not surprisingly, the courts addressing the propriety of this use of chapter 13 have reached contrary conclusions. The older line of authority, represented by *In re Cowen*, 29 B.R. 888 (Bankr.S.D. Ohio 1983) and its progeny, holds that the cure of a discharged debt under a chapter 13 plan is an impossibility. Essentially two rationale undergird this view. First, because a chapter 13 plan can only deal with "creditors," a plan proposing to cure a default on a discharged mortgage obligation is statutorily defective since the mortgagee holding the discharged debt is no longer a "creditor" of the mortgagor. Second, this treatment of the mortgagee constitutes the imposition of a unilateral reaffirmation of the discharged debt, contrary to the consensual character

of reaffirmation under the Bankruptcy Code.

The emerging view, most recently articulated by the Ninth Circuit in *In re Metz*, 820 F.2d 1495 (9th Cir.1987), sees nothing *per se* improper with curing defaults on discharged mortgage debts under a chapter 13 plan. Reasoning that the surviving *in rem* obligation held by the mortgagee is the equivalent of a nonrecourse obligation, the courts adopting this position conclude that since the Code specifically treats nonrecourse obligations as a claim against the debtor, the only inhibition imposed by the Code is the good faith requirement of section 1325(a)(3).

In *Cowen, supra*, the debtors had filed a chapter 7 petition, scheduling the mortgagee of their residence as a secured creditor. Thereafter, the mortgagee brought a foreclosure action in state court in the erroneous belief that the stay had been lifted with respect to its lien when the trustee abandoned the property. The state court refrained from entering any monetary judgment against the debtors on the basis of the pending chapter 7 petition, but did enter a judgment of foreclosure of debtors' interest. While the chapter 7 case was still pending, the debtors filed a chapter 13 petition, again scheduling the mortgagee of their residence as a secured creditor. Two months later, the debtors received a chapter 7 discharge.

In responding to objections to confirmation of the chapter 13 plan, the court held that the chapter 13 plan was void *ab initio* since it was filed prior to the discharge of the debtors in their chapter 7 proceeding. *Cowen, supra*, 29 B.R. at 894–95. Judge Anderson went on to state, in what must be considered dicta, despite the authority the language has been accorded by later courts, that:

> The granting of a discharge relieves a debtor from personal liability on the discharged debt. 11 U.S.C. § 524(a); *In re Nason*, 22 B.R. 690 (Bkrtcy.D.Me.1982). Thus, although a lien may survive, 11 U.S.C. § 506(d), a discharged debt which was not properly reaffirmed is not cognizable as 'debt' in a subsequent proceeding without either a novation of the prior obligation or the creation of an entirely new debt. 11 U.S.C. § 101(11). Thus, a proposal 'to cure' a previously discharged debt is itself an impossibility, despite the availability of (and stay of, upon a serial filing) the remedies accorded a lienholder under state law by virtue of a lien based on such discharged debt. 11 U.S.C. §§ 101(11), 362, 506(d), and 28 U.S.C.A. § 1471(c). [other citations omitted].

*Id.* at 895.

The first reported decision to apply the *Cowen* dicta, without discussion and after quoting the above language in full, to facts identical to those we have in this case was issued by the same court and the same judge in the case of *In re Fryer*, 47 B.R. 180, 182 (Bankr.S.D.Ohio 1985). The court denied confirmation of the debtor's chapter 13 plan for the reasons expressed in *Cowen*. *Id.* Almost simultaneously, in *In re Brown*, 52 B.R. 6 (Bankr.S.D.Ohio 1985), the same bankruptcy court, but a different judge, fleshed out the reasoning articulated in *Cowen* and adopted by *Fryer*.

In *Brown*, Judge Perlman phrased the issue before him as "whether a chapter 13 case filed after a discharge in a chapter 7 case may be utilized to compel a mortgagee to accept the cure of an arrearage owed to it on the defaulted mortgage." *Brown, supra*, 52 B.R. at 6. In resolving this issue, Judge Perlman constructed the following syllogisms. "[T]he plan can only deal with creditors." A creditor is an entity "holding a claim against a debtor." A " 'claim' is defined at 11 U.S.C. § 101(4) ... as a right to payment, or a right to an equitable remedy for breach of performance." The chapter 7 discharge eliminated the contractual right to payment. The mortgagor's state law right of equity of redemption "does not create any status between these parties as to which there could be a breach of performance." *Id.* at 7. Therefore, the mortgagor's naked lien against the real estate is not a "claim." Therefore, the mortgagor is not a "creditor." Ergo, the plan may not deal with the mortgagor's lien. *Id.*

Judge Perlman supplemented his arguably "unduly technical" ruling by finding that "the debtor's conduct justifies the outcome we reach as well as does the technical application of the law." *Id.* The fact that "in connection with her chapter 7 case debtor made no effort whatever to reaffirm her agreement with mortgagee" and in fact "gave every indication in her prior case that there was no objection to relinquishment of the real estate," compelled the court to find that the "debtor waited too long and thus sacrificed any call upon the equitable power of this court" to derail the near-complete foreclosure of the mortgage. *Id.* (citing *In re Bell,* 700 F.2d 1053 (6th Cir.1983), for the proposition "that redemption and reaffirmation constitute the exclusive methods for retention of possession of secured collateral upon bankruptcy").

The court in *In re Binford,* 53 B.R. 307 (Bankr.W.D.Ky.1985) also was presented with our fact pattern. The late Judge Brown was persuaded by both aspects of Judge Perlman's decision. First, Judge Brown found that the mortgagee's lien was not a "claim" against the debt and hence, the mortgagee was not a "creditor" with whom the plan could deal.

> [T]he debtor has no obligation under a lien or mortgage. A lien or mortgage creates, constitutes, or imposes no legal obligations upon the debtor. Rather it constitutes a consensual, statutory, or judicial charge against the debtor's property to assure satisfaction in whole or part of a separate legal obligation. In this case, the separate obligation was the underlying but now discharged note.

*Binford, supra,* 53 B.R. at 309. Second, Judge Brown noted that *Bell, supra,* is cited as authority for the proposition that redemption and reaffirmation constitute the exclusive methods for possession of secured collateral upon bankruptcy. He then elucidated the connection between this proposition and the defect in the debtor's proposed plan.

> Under this proposed Plan, the debtor seeks to do indirectly that which he cannot do directly, i.e. file a Chapter 13 and compel a reaffirmation of a debt when the creditor has not agreed thereto pur-

suant to Section 524(c). The rights to modify an existing contract pursuant to Section 1322(b)(2) and (5) do not negate the requirements of Section 524(c) mandating that reaffirmation agreements may only be enforceable by agreement of the parties and compliance with such other provisions as there set forth.

*Id.* As a result, the confirmation of the debtor's plan was denied.

Again on identical facts, the court in *In re McKinstry,* 56 B.R. 191, 193 (Bankr.D. Vt.1986) followed *Brown et al* and denied confirmation of the debtor's chapter 13 plan for its proposal to cure arrearages on a discharged mortgage debt. The court based its ruling on both the arguments that the mortgagee is not a creditor and that the debtor cannot unilaterally impose the equivalent of a reaffirmation on the mortgagee.

> Not only is a discharged debt unenforceable, but the debtor has no personal liability on such a debt, 11 USC Section 524(a)(1). In effect, the discharge extinguishes the debt. House Report No. 95–595, 95th Cong., 1st Sess. 365–6 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 80 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5866, 6320. The mortgagee is, therefore, no longer a creditor as defined in 11 USC Section 101(9), for it has no claim on the promissory note accompanying the mortgage. [citations omitted].
>
> . . . .
>
> ... The debtor, of course, had an opportunity under 11 USC Section 524(c) to negotiate a reaffirmation of the obligation to the [mortgagee] underlying the mortgage during his earlier Chapter 7 bankruptcy. He did not so act. Having failed to reaffirm the discharged debt, the debtor may not now unilaterally impose a reaffirmation on the mortgagee in a subsequent Chapter 13 bankruptcy in order to prevent foreclosure.

*Id.* More recently *In re Reyes,* 59 B.R. 301 (Bankr.S.D.Cal.1986), denied confirmation of the chapter 13 plan for its inclusion of defaults on discharged mortgage indebted-

ness stating "[d]ebtors' Chapter 13 plan cannot compel a reaffirmation of a debt that was discharged under a previous Chapter 7." *Reyes, supra,* at 302.

Four cases, culminating with the Ninth Circuit's ruling in *Metz, supra,* have declined to adhere to the *Cowen* position. The first dissent from what was then the "consensus view" was filed by the bankruptcy court for the Eastern District of Pennsylvania in *In re Lewis,* 63 B.R. 90 (Bankr.E.D.Pa.1986). Judge Goldhaber's examination of section 101(4)'s definition of "claim" led him to conclude:

> In light of the breadth of the definition of the term 'claim', we hold that a claim may include a creditor's encumbrance against property of the estate although there is no in personam liability against the debtor.

*Lewis, supra,* 63 B.R. at 92. Thus, "[s]ince the debtors' obligation to [the mortgagee] is a claim, the debtors may provide for payment of that claim in a chapter 13 plan." *Id.* Judge Goldhaber also took exception to the reliance in *Brown, supra,* on the proposition that, postdischarge, a chapter 7 debtor can only retain encumbered collateral by redemption of the property or reaffirmation of the debt:

> If the debtor is not in default under a mortgage or security agreement, neither redemption nor reaffirmation is necessary for retention of the property. So long as the debtor's exemption covers any equity in the property, the maintenance of payment and the absence of other defaults are generally sufficient.

*Id.* at 93, n. 2.

The next case to depart from the majority view was *In re Lagasse,* 66 B.R. 41 (Bankr.D.Conn.1986). The *Lagasse* court relied on the rule of construction found in section 102(2) that " 'claim against the debtor' includes claim against property of the debtor" to conclude that "claim" as defined in section 101(4) include the mortgagee's *in rem* claim. *Lagasse, supra,* 66 B.R. at 43. The court articulated its disagreement with *Brown et al:*

> After due consideration I find the majority view unpersuasive. When debtors re-

ceive a chapter 7 discharge of a secured debt, that changes the debt relationship between the debtors and the secured party into that of a nonrecourse obligation. *See* § 506(d). I perceive no reason why curing of a nonrecourse debt may not be included in a chapter 13 plan. The clear language of §§ 102(2) and [101] (4), and § 1322(b)(5) does not forbid it, and the legislative history of § 102(2) supports it.

*Id. In re Klapp,* 80 B.R. 540 (Bankr.W.D. Okla.1987), found that "the view represented by *Lewis* and *Lagasse,* although apparently in the minority, is clearly the better view." *Id.* at 542. This too was the view expressed by the Ninth Circuit in *Metz, supra:*

> We agree that a chapter 13 petitioner may include a mortgage claim within a plan even though the underlying obligation of the mortgage was discharged in the debtors' prior bankruptcy case. We find no statutory prohibition to such a practice except the good faith filing requirement of section 1325(a)(3). Thus, although a chapter 13 plan may, as a matter of law, cure arrearages on a mortgage debt discharged by chapter 7, the plan may nevertheless violate the purpose and spirit of chapter 13 and thus not be submitted in good faith.

820 F.2d at 1498.

The approach taken in *Metz, supra,* has much to recommend it. First, its view of the Code's definitional sections appears sound. Section 101(9) defines a creditor as "an entity that has a claim against the debtor," while section 102(2) requires this language to be construed as "includ[ing] claim against property of the debtor." The Code envisions that "nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally ... give rise to a claim that would be treated as a claim against the debtor personally, for the purposes of the bankruptcy code." Sen.Rep. No. 95–989, U.S.Code Cong. & Admin.News 1978, 5787, 5814. Second, by focusing the inquiry on the debtor's good faith in proposing the plan, the problem of unfairness to the mortgagee can be ad-

dressed. The proposed cure of the discharged, unreaffirmed debt would be one consideration in making the good faith determination, as would be the fact that only the creditor with whom the plan deals is the mortgagee.

Finally, the courts have addressed the propriety of various aspects of so-called chapter 20 or chapter 19 plans by examining the good faith of the debtor on an *ad hoc* basis rather than by relying on intricate ratiocinations through Code provisions that yield *per se* rules. In the recent case of *In re Edwards*, 87 B.R. 671 (Bankr.W.D. Okla.1988) the debtors had obtained a chapter 7 discharge, relieving them of approximately $3.5 million in debt, including more than $1 million in unsecured debt. They then filed a chapter 12 petition, qualifying for relief under the debt limitations of section 101(17)(A) only a result of their chapter 7 discharge. The court rejected a *per se* rule against such a manipulation of chapter 12's eligibility requirements, opting instead to adopt a burden-shifting approach to the good faith inquiry.

> While the court has rejected Equitable's suggestion of a *per se* bad faith rule in "Chapter 19" cases, it has concluded that the filing of a Chapter 12 petition by a debtor or debtors soon after the granting of a discharge in a Chapter 7 petition should constitute *prima facie* evidence of bad faith, requiring debtor or debtors to come forward with an affirmative showing of their good faith, including but not limited to factual justification for the multiple filings, the lack of significant disadvantage to any creditor or creditors beyond that which would have occurred in the absence of the successive filings, materially changed circumstances and the like.

*Edwards, supra,* at 675. *See also Downey Savings and Loan Ass'n. v. Metz (Metz I )*, 67 B.R. 462, 466 (9th Cir.BAP 1986) *aff'd* 820 F.2d 1495 (9th Cir.1987) (*Metz II* ) (*per se* rule that chapter 20 Plan proposed in bad faith runs counter to "totality of the circumstances" analysis); *In re Brock*, 47 B.R. 167, 169 (Bankr.S.D.Cal.1985) (chapter 13 plan proposing to discharge debt nondischargeable in prior chapter 7 filed in bad

faith based on "totality of the circumstances" test). This gestalt approach to the good faith inquiry suggests that where a close call on a threshold question arises, a court can subsume the issue in the question of good faith.

## II. Good Faith Proposal of Plan

The Seventh Circuit applies a "totality of the circumstances" test to determine whether a chapter 13 plan has been proposed in good faith. *See In re Smith*, 848 F.2d 813, 819 (7th Cir.1988) (confirming validity of "totality of the circumstances" test after enactment of Bankruptcy Amendments and Federal Judgeship Act of 1984). In *Smith,* the debtor proposed to discharge a debt nondischargeable in a chapter 7, and which arose out of a car-repair scam. In assessing the debtor's good faith, the court held that the debtor's prefiling conduct was relevant, as was the timing of his filing. *Smith, supra,* 848 F.2d at 821. Among the cases cited favorably by the court was *Metz II. Id.* at 818 n. 4.

In *Metz II,* the court analyzed the debtor's proposal to cure a discharged mortgage debt and multiple chapter 13 filings as factors in the good faith inquiry. *Metz II, supra,* 820 F.2d at 1498. The court then went on to find that:

> [The debtor] proposed to pay the arrears to [the mortgages] over thirty-six months at a market rate of 12%. He had shown good faith by keeping the payments on his house current. His increased salary made it possible for the first time in the bankruptcy proceedings to propose such a cure. Such a bona fide change in circumstances is precisely what the bankruptcy judge should examine to determine whether successive filings are proper. *See In re Johnson*, 708 F.2d 865, 868 (2d Cir.1983).

*Id.* Therefore, the court found the plan to have been proposed in good faith.

In contrast to the debtor in *Metz,* the debtors in this case have not kept their mortgage payments current, having defaulted repeatedly since their chapter 7 discharge. Moreover, the debtors have not

come forward with any bona fide change in circumstances to justify their successive filings of chapter 13 petitions, the previous two of which were dismissed for failure to make plan payments. *Compare In re Chisum,* 847 F.2d 597, 600 (9th Cir.1988) (after noting that " '[a] debtor's history of filings and dismissals is relevant in determining whether a plan has been proposed in good faith,' " (quoting *In re Nash,* 765 F.2d 1410, 1415 (9th Cir.1985)) court holds that bona fide change in circumstance justified the debtor's multiple filings); *Metz II, supra,* 820 F.2d at 1497 (no *per se* rule against successive filings; however, "successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements"). Finally, the only creditor dealt with by the plan is the bank, whose *in personam* claim has been effectively extinguished by the chapter 7 discharge. *Compare In re Beauty,* 42 B.R. 655, 657 (E.D. La.1984) (court finds a lack of good faith under section 1325(a)(3) where plan filed less than a month after the chapter 7 discharge and where plan dealt only with secured claims). These factors considered together justify dismissal on the basis of section 1325(a)(3). *See In re Smith, supra,* 848 F.2d at 818 (" 'totality of circumstances' test forces the bankruptcy court to examine 'whether or not under the circumstances of the case there has been abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal.' ") (quoting *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982)); *cf. In re Clark,* 86 B.R. 593, 17 B.C.D. 1323, 1325 (Bankr.E.D.Ark.1988) ("the lengthy history of multiple bankruptcy filings on the eve of foreclosure sales, the existence of only one secured creditor with a debt past due for over 3 years, the non-existent schedules and statement of affairs in this debtor's first Chapter 13 case, the incomplete schedules and statement of affairs in the second Chapter 13 case as well as the obvious lack of regular and stable income which is required of a debtor to qualify for Chapter 13 relief provide more than sufficient reasons to dismiss this case as an abuse of the court's process.").

In this case, the debtors' lack of good faith in proposing this plan is apparent under the *Smith* test. The only scheduled creditor is the Bank, and the only debt addressed by the plan is the arrearages on the mortgage. The debtors' personal liability on the mortgage debt was discharged in May of 1986. Moreover, the debtors have filed two prior chapter 13 petitions, both of which were dismissed for failure to make plan payments.

Upon the foregoing which constitute my findings of fact and conclusions of law in this matter, the plan proposed by the debtors may not be confirmed and the case must be dismissed. It is so ordered.