**In re Curtis Reed JOHNSON, Debtor.**

**Bankruptcy No. 87–10585.**
**Civ. No. 88–1270–K.**

United States District Court,
D. Kansas.

Jan. 3, 1989.

W. Thomas Gilman, Redmond, Redmond & Nazar, Sharon A. Self, Mid–Kansas Federal Sav. and Loan, Wichita, Kan., for debtor.

Royce Wallace, Wichita, Kan., trustee.

Patricia A. Reeder, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for Kansas Bankers Ass'n, amicus curiae.

Dennis E. Shay, Calvin D. Rider, Smith, Shay, Farmer & Wetta, Wichita, Kan., for appellant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Home State Bank of Lewis, Kansas (the "Bank"), creditor, appeals from the bankruptcy court's confirmation of the Chapter 13 Plan of Curtis Reed Johnson, debtor. The Bank seeks reversal of the order confirming the plan on the ground the plan lacks feasibility, was not proposed in good faith, and improperly schedules a debt previously discharged in the debtor's Chapter 7 bankruptcy proceeding.

The court previously heard oral argument on this appeal, but reserved ruling at that time. After reviewing the briefs and supporting documentation filed by the parties, as well as an amicus curiae brief filed by the Kansas Bankers Association, the court is now prepared to rule.

In reviewing the bankruptcy court's decision, this court is bound by the factual findings of the bankruptcy court unless they are clearly erroneous. The legal conclusions of the bankruptcy court, however, are subject to *de novo* review by this court. *In re Herd,* 840 F.2d 757, 759 (10th Cir. 1988); *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986).

The facts relevant to this appeal are as follows:

On May 1, 1978, Curtis Johnson and his wife, Donna Jo Johnson ("the Johnsons") executed a promissory note in favor of Travelers Insurance Company ("Travelers") in the amount of $165,000.00. The note was secured by a first mortgage on two quarter sections of land in Edwards County, Kansas.

On June 2, 1978, the Johnsons executed a promissory note in the amount of $100,-000.00 to the Home State Bank. To secure

the loan, the Johnsons gave the Bank a second mortgage on the Edwards County property. The mortgage states that it is subject to the first mortgage of Travelers. Both the first and second mortgages contained clauses whereby in the event of a default, any royalty income received by the Johnsons from certain oil and gas leases on the property would be assigned to the mortgagees.

On February 25, 1983, the Johnsons executed another loan agreement with the Bank through which the Johnsons received a line of credit in the aggregate amount of $370,000.00. The Johnsons executed two notes with respect to this loan agreement, a renewal note in the amount of $310,-000.00 and a new note in the amount of $60,000.00. The loans were secured by security agreements on various personal property and by the 1978 real estate mortgage in the amount of $100,000.00.

The Johnsons subsequently defaulted on their notes with the Bank, and on March 23, 1984, the Bank filed a foreclosure action against the Johnsons in the District Court of Edwards County, Kansas. The Bank sought judgment against the Johnsons for the balance due on the renewal note, plus interest, and for foreclosure of its mortgage and sale of the real estate and the royalty interests and the personal property covered by the security agreements.

The Johnsons filed their joint Chapter 7 petition in bankruptcy on October 9, 1984. On April 11, 1985, the bankruptcy court discharged the Johnsons from all dischargeable debts. At approximately the same time, the bankruptcy court entered an order granting the Bank relief from the automatic stay to proceed with the foreclosure action it had previously filed in the District Court of Edwards County.

On October 9, 1985, the District Court of Edwards County granted summary judgment in favor of the Bank. The court found the Bank was entitled to foreclose its June 2, 1978 mortgage and have the property sold, subject only to Travelers' first mortgage, to all oil and gas leases of record, and to the Johnsons' right to redeem the property.

Pursuant to the order of sale, the property was subsequently sold for the sum of $473,013.41. That sum represented the combined bids of Travelers ($134,083.00) and the Bank ($337,172.45), and the additional sum of $1,757.96 for taxes.

On December 4, 1985, the Johnsons filed their notice of appeal from the judgment of the Edwards County District Court. The appeal was subsequently transferred to the Kansas Supreme Court. Sometime prior to resolution of the case by the Kansas Supreme Court, the Bank purchased the first mortgage of Travelers and thus became the holder of both mortgages.

On December 11, 1986, the Kansas Supreme Court reversed and remanded the case to the district court with directions to set aside the sheriff's sale and deed, and for further proceedings in conformity with the opinion. *Home State Bank v. Johnson*, 240 Kan. 417, 729 P.2d 1225 (1986). The court held, *inter alia*, that when a district court enters an order of foreclosure *in rem* against mortgaged land, it is error for the court to fail to determine and state the amount of the judgment which is being entered against the land.

On remand, the district court granted the Bank judgment on its second mortgage *in rem* in the principal amount of $100,000.00, plus accumulated interest. The court also found that the balance due on the first mortgage previously owned by Travelers and purchased by the Bank amounted to $100,447.22. Further, the court granted the Bank an *in rem* judgment in the amount of $1,757.96 for taxes paid by the Bank. Finally, the court entered an order of sale specifying that the property be sold by the sheriff on April 3, 1987.

On March 2, 1987, Curtis Johnson filed his voluntary Chapter 13 petition in bankruptcy. The debtor listed the Bank as a partially secured creditor based on the district court's most recent entry of judgment. On May 7, 1987, the Bank filed a "secured" proof of claim in this matter in the amount of $511,421.55, and on June 3, 1987, the Bank filed a detailed objection to the confirmation of the debtor's proposed plan.

On June 23, 1987, the bankruptcy court held debtor's plan "not confirmable for lack of feasibility on present circumstances," but gave the debtor an opportunity to present an amended plan. (Tr., p. 108.) The debtor subsequently filed his first amended plan and the Bank again filed objection to the debtor's proposed plan.

Under the amended plan, the debtor proposes to pay to the Bank the Edwards County District Court judgment in five annual installments of $11,100.00, $35,520.00, $35,520.00, $38,850.00, and $19,425.00, with a final balloon payment of $80,625.92 at the conclusion of the 5–year plan. The plan further proposes to make monthly payments through the trustee in the amount of $291.42 to Mid–Kansas Federal Savings and Loan Association, with a balloon payment of $6,507.00 to that institution at the end of the 60–month plan.

The bankruptcy court confirmed debtor's first amended Chapter 13 plan on April 8, 1988. While the debtor has made the first payment due to the trustee in the amount of $11,100.00, as of December 9, 1988, he had not yet made his 1988 annual payment of $35,520.00.

The Bank now appeals from the bankruptcy court's order confirming the debtor's Chapter 13 plan. The Bank contends the court erred in confirming the plan because the plan included debts previously discharged in debtor's Chapter 7 proceedings. The Bank further argues the bankruptcy court erred in finding the debtor's plan was feasible and proposed in good faith.

The Bank first contends reversal of the bankruptcy court's order confirming the debtor's Chapter 13 plan is required because the court improperly permitted the debtor to schedule a debt which had been previously discharged in Chapter 7 proceedings. The Bank points out that while Chapter 13 permits a qualified debtor to reschedule his obligations, the plan can only deal with the debtor's "creditors". A "creditor" is an "entity that has a claim against the debtor." 11 U.S.C. § 101(9). A "claim" is a "right to payment, . . ." or a "right to an equitable remedy for breach of

performance if such breach gives rise to a right to payment, . . ." 11 U.S.C. § 101(4). The Bank reasons that when the debtor's obligation to the Bank was discharged under Chapter 7, the debtor no longer had any personal liability to the Bank, and therefore the Bank had no right to payment from the debtor and no "claim" against the debtor which could be scheduled in a Chapter 13 plan.

The debtor acknowledges that the Bank holds a lien against his property but no longer holds any claim against him personally. Nevertheless, the debtor contends the Bank has a "claim" against him which can be restructured in a Chapter 13 proceeding. The debtor reaches this conclusion by broadly defining the term "claim" to include claims against the debtor's property.

The bankruptcy court agreed with the debtor herein and found that even though a debtor's personal liability on a mortgage has been discharged, the debtor may propose a confirmable plan under Chapter 13 to satisfy the liability. The court held:

A creditor's "claim" under Chapter 13 includes not only a right to payment but also a right to an equitable remedy for breach of performance.

When a debtor receives a discharge of a secured debt it changes the debt relationship between the parties to a nonrecourse obligation. The reamortization of a nonrecourse obligation, therefore, may be accomplished in a Chapter 13 plan.

(Memorandum of Decision, Apr. 8, 1988, pp. 10–11) (citations omitted.) Because the bankruptcy court's conclusion is a legal one, it is subject to *de novo* review by this court.

The Tenth Circuit Court of Appeals has recognized that although a debtor has been discharged from personal liability on a secured debt under Chapter 7, the *in rem* liability of the property held as security remains unaffected and unenforceable by the mortgagee after discharge. *See Chandler Bank of Lyons v. Ray,* 804 F.2d 577, 579 (10th Cir.1986). *See also* 3 COLLIER ON BANKRUPTCY ¶ 524.01[3] (L. King. 15th ed. 1988). The court is unaware, how-

ever, of any controlling authority on the issue of whether a debtor who has been discharged from *in personam* liability on a secured debt may then reschedule that debt in a Chapter 13 proceeding.

The majority of courts which have considered the issue now before this court have found that a debtor may not schedule a debt in a Chapter 13 plan if that debt has been previously discharged in a Chapter 7 proceeding. *See, e.g., In re McKinstry*, 56 B.R. 191, 193 (Bankr.D.Vt.1986) (debtor may not unilaterally reaffirm a discharged debt in an attempt to avoid foreclosure by scheduling the creditor in a proposed Chapter 13 plan); *In re Binford*, 53 B.R. 307, 309 (Bankr.W.D.Ky.1985) (debtor could not include with Chapter 13 plan a proposal to cure arrearage due a secured real estate mortgagee where mortgagee was listed and discharged in previously filed Chapter 7 proceeding and no reaffirmation or redemption agreement was executed, since mortgage created no legal obligations upon debtor, and underlying debt had been discharged); *In re Brown*, 52 B.R. 6, 7 (Bankr.S.D.Ohio W.D.1985) (Chapter 13 case, filed after discharge of Chapter 7 case, could not be utilized to compel mortgagee to accept cure of arrearage owed on defaulted mortgaged).

The primary rationale underlying these decisions was recently summarized in *In re Hagberg, to be reported at* 92 B.R. 809 (Bankr.W.D.Wis.1988), as follows:

First, because a chapter 13 plan can only deal with "creditors," a plan proposing to cure a default on a discharged mortgage obligation is statutorily defective since the mortgagee holding the discharged debt is no longer a "creditor" of the mortgagor. Second, this treatment of the mortgagee constitutes the imposition of a unilateral reaffirmation of the discharged debt, contrary to the consensual character of reaffirmation under the Bankruptcy Code.

More recently, a number of courts have taken a different approach, holding that a debtor may, through a Chapter 13 plan, cure a default on a mortgage debt previously discharged under Chapter 7. *See,*

*e.g., Matter of Metz*, 820 F.2d 1495, 1498 (9th Cir.1987) (Chapter 13 petitioner may include a mortgage claim within a plan even though the underlying obligation of the mortgage was discharged in debtor's prior Chapter 7 case); *In re Hagberg*, 92 B.R. 809 (even though creditor's only rights are against property of the debtor, creditor has a "claim" against the debtor which may be scheduled in Chapter 13 plan); *In re Klapp*, 80 B.R. 540, 542 (Bankr.W.D. Okla.1987) (a mortgage securing a debt previously discharged in Chapter 7 proceedings constitutes a nonrecourse obligation, and thus can be scheduled in a Chapter 13 plan); *In re Lewis*, 63 B.R. 90, 92 (Bankr.E. D.Pa.1986) (although debtor's personal obligation to mortgagee has been discharged in prior Chapter 7 proceeding, debtor's obligation to mortgagee was still a "claim" which could be scheduled in debtor's Chapter 13 plan).

The basis for these decisions was succinctly explained by the court in *In re Hagberg*, 92 B.R. at 812, as follows:

Reasoning that the surviving in rem obligation held by the mortgagee is the equivalent of a nonrecourse obligation, the courts adopting this position conclude that since the Code specifically treats nonrecourse obligations as a claim against the debtor, the only inhibition imposed by the Code is the good faith requirement of [11 U.S.C.] section 1325(a)(3).

While the court recognizes that this approach, i.e., permitting the debtor to schedule in a Chapter 13 plan a debt which has been previously discharged under Chapter 7, constitutes the "emerging view," *In re Hagberg*, 92 B.R. at 812, the court is not persuaded that it is the correct approach.

▬ Rather, the court finds that a debt which has been discharged in a Chapter 7 proceeding in which no reaffirmation or redemption agreement was executed, cannot be scheduled in the debtor's subsequent Chapter 13 plan. The court is convinced that where, as here, a mortgage obligation has been discharged under Chapter 7, the mortgagee no longer holds a "claim" against the debtor, but rather,

holds only a lien against the debtor's real estate. Thus, the mortgagee is not a "creditor" of the debtor and holds no claim which can be scheduled in debtor's Chapter 13 plan.

11 U.S.C. § 101(4) defines "claim" as a:

(A) *right to payment,* whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment,* whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

(Emphasis added.)

It is clear to the court that the Bank has no "right to payment" from the debtor herein since the debtor's personal liability on the underlying obligation was discharged under Chapter 7. Thus, the Bank has no "claim" against the debtor as that term is defined at § 101(4)(A). Moreover, the court does not concur with the bankruptcy court's determination that the Bank has a right to an equitable remedy for breach of performance which gives rise to a right of payment. While the Bank may have the right to an equitable remedy in the form of a state court foreclosure action because the debtor has breached performance on a promissory note, it cannot be said that the debtor's "breach" gives rise to a right of payment. The Bank will never have a right to receive payment from the debtor's "breach" because the debtor obtained a discharge under Chapter 7. Simply said, the Bank has no right to payment from the debtor—either directly or through a mortgage foreclosure action in state court.

Nor does the court find that the Bank's interest in the debtor's property can properly be characterized as a "nonrecourse loan agreement." The Bank holds a lien against the debtor's real estate which is not accompanied by any obligation, note, debt, or right to payment upon the debtor's breach of performance.

Finally, the court finds it significant that the debtor had an opportunity to negotiate a reaffirmation of the discharged debt during the Chapter 7 proceeding, but failed to do so. 11 U.S.C. § 524(c); *In re McKinstry,* 56 B.R. at 193. Therefore, the court will not now permit the debtor to impose a unilateral reaffirmation of the mortgage upon the mortgagee by scheduling the discharged debt in a Chapter 13 plan. *Id. See also In re Binford,* 53 B.R. at 309; *In re Brown,* 52 B.R. at 7.

Because the court concludes today that the debtor's Chapter 13 plan cannot be confirmed because it improperly schedules a debt previously discharged under Chapter 7, the other issues raised by the Bank—i.e., that the debtor's Chapter 13 plan was not proposed in good faith and lacks feasibility —are moot and will not be taken up by the court.

IT IS ACCORDINGLY ORDERED this 3rd day of January, 1989, that the bankruptcy court's order affirming debtor's Chapter 13 plan is reversed.